NO. 07-10-00213-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 7, 2011

BECKY ELIZONDO, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE COUNTY COURT AT LAW NO. 1 OF LUBBOCK COUNTY;

NO. 2009-454,835; HONORABLE LARRY B. "RUSTY" LADD, JUDGE

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**OPINION**

Appellant Becky Elizondo appeals from her jury conviction of the offense of theft in an amount of $50 to $500 and the resulting sentence of thirty days in the Lubbock County Jail. Through one issue, she argues the trial court erred in failing to grant her motion to suppress her confession. We will affirm.

Background

On March 18, 2009, appellant and her friend Linda walked into an Old Navy store in Lubbock. A loss prevention officer for the store, Mora, saw the women arrive. He noticed Linda was carrying a flat purse. Mora watched the two, and eventually saw

Linda, with appellant at her side, put items of merchandise in her purse. He intercepted the two after they passed the registers and walked out of the store without paying for the items. He asked them to return to the store, and took them to the manager's office, where Linda produced the items from her purse.

Mora gave appellant a document entitled "Gap Inc. Civil Demand Notice."[1] He asked her to read and sign it if she agreed with it. The document contained the statement, "I, Becky Abajo Elizondo, have admitted to the theft of merchandise/cash valued at $65.00 from GAP INC., Store No. 6220, located at 6249 Slide Rd. I also hereby acknowledge that my detention on this date was reasonable." Appellant completed the form and signed and dated it. Mora took photographs of appellant and the stolen clothing, and had a store clerk print a receipt reflecting the value of the merchandise.

Appellant was in the store manager's office about an hour. Mora then called Lubbock police, who came to the store and arrested appellant and Linda. Sometime before trial, an investigator with the district attorney's office contacted Mora and received from him a copy of his report that included the civil demand notice.

Appellant filed a motion to suppress the civil demand notice obtained by Mora. The trial court heard the motion at the beginning of trial. Mora testified at the hearing. The civil demand notice, the photographs, and the receipt were received as evidence at the suppression hearing. The trial court denied appellant's motion to suppress and

---

[1] Appellant's brief explains that Old Navy stores are affiliated with Gap, Inc.

made findings of fact and conclusions of law on the record. The case proceeded to trial and appellant was found guilty and sentenced as noted. This appeal followed.

Analysis

Through her sole issue, appellant argues the trial court erred in failing to grant her motion to suppress her confession because it was obtained in violation of the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 10 of the Texas Constitution and article 38.22 of the Texas Code of Criminal Procedure. U.S. Const. amends. V, XIV; Tex. Const. art. 1, § 10; Tex. Code Crim. Proc. Ann. art. 38.22 (West 2010).

Applicable Law

A trial court's ruling on a motion to suppress a confession is reviewed on an abuse of discretion standard. *Balentine v. State,* 71 S.W.3d 763, 768 (Tex.Crim.App. 2002). In determining whether the trial court abused its discretion we give "almost total deference to a trial court's determination of the historical facts" and review the court's application of the law to the facts *de novo. Guzman v. State,* 955 S.W.2d 85, 88-89 (Tex.Crim.App. 1997). If the issue involves the credibility of a witness, such that the demeanor of the witness is important, then greater deference will be given to the trial court's ruling on that issue. *Guzman*, 955 S.W.2d at 87. In a motion to suppress hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Accordingly, the trial court may believe or disbelieve all or any part of

a witness's testimony, even if that testimony is not controverted. *Id*. We will uphold the trial court's ruling on a motion to suppress if that ruling was supported by the record and was correct under any theory of law applicable to the case. *Id*. at 856.

As here, when the trial court makes findings of fact and conclusions of law with its ruling on a motion to suppress, an appellate court does not engage in its own factual review, but determines only whether the record supports the trial court's fact findings. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). Unless the trial court abused its discretion by making a finding not supported by the record, we will defer to the trial court's fact findings and not disturb the findings on appeal. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex.Crim.App. 1991). On appellate review, we address only the question of whether the trial court properly applied the law to the facts. *Romero*, 800 S.W.2d at 543.

Although appellant's stated issue includes references to the United States and Texas constitutions, her argument focuses on the requirements of article 38.22 of the Texas Code of Criminal Procedure. Her argument is that the store loss prevention officer Mora was acting as an agent of the State when he obtained her signature on the civil demand notice, and article 38.22, § 2 precluded its admission as evidence against her. Article 38.22 makes inadmissible in criminal proceedings a written statement resulting from custodial interrogation unless the statement contains the statutory

*Miranda*[2] warnings.  Tex. Code Crim. Proc. Ann. art. 38.22, § 2 (West 2010); *Oriji v. State,* 150 S.W.3d 833, 836 (Tex.App.—Houston [14th Dist.] 2004, pet. ref'd).

The term "custodial interrogation" in article 38.22 is to be construed consistently with its meaning under the Fifth Amendment to the United States Constitution. *Bass v. State,* 723 S.W.2d 687, 690-91 (Tex.Crim.App. 1986). In *Miranda***,** the United States Supreme Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444; *Escamilla v. State*, 143 S.W.3d 814, 824-25 (Tex.Crim.App. 2004); *Paez v. State*, 681 S.W.2d 34, 36-37 (Tex.Crim.App. 1984) (holding article 38.22 does not apply to non-law enforcement personnel who are not government agents). Accordingly, the "safeguards attendant to custodial interrogation do not come into play unless the person to whom the statements are made is acting as an agent of law enforcement pursuant to a police practice." *Macias v. State*, 733 S.W.2d 192, 195 (Tex.Crim.App. 1987); *Oriji*, 150 S.W.3d at 837.  Statements made by the accused that do not stem from a custodial interrogation are admissible under article 38.22. Tex. Code Crim. Proc. Ann. art. 38.22**,** § 5 (West 2010).

Private citizens, even security guards, ordinarily are not regarded as law enforcement officers and thus cannot engage in custodial interrogation under article 38.22.  *Oriji*, 150 S.W.3d at 836, citing *Ortiz v. State*, 727 S.W.3d 37, 38-39 (Tex.App.—

---

[2] *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

San Antonio 1987, pet. ref'd). But a private citizen may act as an agent of law enforcement officers so as to become bound by the restrictions of article 38.22. *Wilkerson v. State,* 173 S.W.3d 521, 529-30 (Tex.Crim.App. 2005) (person, "whether CPS caseworker, teacher, preacher, probation officer, or mere family friend" proven to be working for or on behalf of the police by interrogating another in custody, "is bound by all constitutional and statutory confession rules, including *Miranda* and Article 38.22").[3]

In this context, the term "agency" reflects a consensual relationship existing between two persons or parties where one of them is acting for or on behalf of the other. *Wilkerson*, 173 S.W.3d 529. The law does not presume an agency relationship, and the person alleging its existence has the burden of proving it. *Id.*

*Oriji* involved facts similar to those at bar. The defendant gave a written statement admitting theft to a Foley's Department Store loss prevention officer. 150 S.W.3d at 835. After her motion to suppress the statement was denied in her subsequent prosecution for theft, the defendant argued on appeal that article 38.22 required *Miranda* warnings even for statements taken by private store security personnel. Rejecting her argument, the court found no evidence that any of the Foley's employees were agents of law enforcement pursuant to a police practice when they obtained the statement. *Id.* at 837*.* The court said the statement was not the result of

---

[3] *See Estelle v. Smith*, 451 U.S. 454, 68 L.Ed.2d 359, 101 S. Ct. 1866 (1981) (*Miranda* applied to custodial statements of defendant to psychiatrist appointed by court to determine mental competency, when psychiatrist testified for the State during punishment phase).

custodial interrogation because the Foley's loss prevention officer was not acting at the request of police officers to elicit incriminating information from the defendant. *Id.* at 836. If further found law enforcement officers "did not initiate, know of, or acquiesce in" the store employees' efforts to obtain the defendant's statement, and found the store employees "obtained the statement to further the store's needs in preventing theft, not for law enforcement purposes." Accordingly, the court found, the defendant's written statement to the store employees was not inadmissible under article 38.22. *Id.* at 837.

Appellant attempts to distinguish *Oriji*, and argues that here, police and the district attorney were aware of the practices of Old Navy and other retailers to obtain written admissions from shoplifters without providing *Miranda* warnings and that prosecutors repeatedly made use of them as evidence in theft prosecutions.[4] Appellant's argument focuses on the relationship between law enforcement authorities and Mora. *See Wilkerson*, 173 S.W.3d at 530 (courts reviewing asserted agency relationship should first examine that between police and the asserted agent).

The trial court's findings included one reading: "The District Attorney's Office is aware of the practice of obtaining civil demand notices and sent their investigator to Old Navy to acquire the document before trial." The record supports the finding, but we agree with the trial court it does not lead to a conclusion Mora was acting as the agent of law enforcement when he obtained the civil demand notice from appellant.

---

[4] Appellant also contends the evidence she was held in the store manager's office for an hour requires the conclusion her interrogation by Mora was custodial. Because we agree with the trial court that Mora was not acting as an agent of law enforcement officers, we do not address the circumstances of appellant's detention.

Neither the police nor the district attorney's office was aware of Mora's conversation with appellant until after it was completed and they were not involved in Mora's investigation in any way. *See Oriji,* 150 S.W.3d at 837; *Franklin v. State,* No.01-05-01129-CR, 2007 Tex.App. LEXIS 2675, at * 16 (Tex.App.—Houston [1st Dist.] April 5, 2007, pet. ref'd) (mem. op., not designated for publication) (finding one conducting search not acting as government agent, under Fourth Amendment analysis). No evidence indicates Mora or his employer had any agreement with or received instructions from any government official regarding his questioning of appellant. *See Manns v. State,* 122 S.W.3d 171, 183-84 (Tex.Crim.App. 2003) (under Sixth Amendment analysis, to qualify as government agent, informant must at least have some sort of agreement with, or act under instructions from, government official); *Macias*, 733 S.W.2d at 195 (informant not acting as agent because, *inter alia*, he was never asked to question the defendant or to report his discoveries to anyone). Nor is there any evidence showing police were present during the interview, provided Mora with the questions to ask appellant, or provided implicit or explicit instructions to get certain information from her. *Wilkerson,* 173 S.W.3d at 530. The record does not reflect a relationship between Mora and law enforcement authorities by which the authorities were "using" Mora for their own purposes. *Id.* Said another way, Mora did not obtain appellant's statement "pursuant to a police practice." *Macias,* 733 S.W.2d at 195; *see Vanegas v. State,* No. 02-08-0356-CR, 2009 Tex.App. LEXIS 7907, at *32-33 (Tex.App.—Fort Worth Oct. 8, 2009, no pet.) (mem. op., not designated for publication) (court found no evidence to indicate civilian "in cahoots" with law enforcement); *Hines v. State,* No. 14-04-01124-CR, 2006 Tex.App. LEXIS 3256 (Tex.App.—Houston [14th Dist.]

8

April 13, 2006, no pet.) (mem. op., not designated for publication) (law enforcement officers did not initiate, know of, or acquiesce in Wal-Mart employees' efforts to obtain statement from defendant).

We cannot agree the general awareness of police or prosecutors that retailers take non-*Mirandized* statements from shoplifters, even if accompanied by a common practice to obtain and introduce the statements at trial, renders the store employees the agents of law enforcement when they take the statements. The government's willing acceptance of information provided through selfish motives by an inmate informant did not make the informant the government's agent under the Sixth Amendment in *Manns*, 122 S.W.3d at 189, and the same is true here. As with the selfishly-motivated inmate, the element missing is the instruction or request from the government. *See id.* at 183-84. That the State has come to expect such cooperation from retailers does not change the result. *See id.* at 184-86.

Under the analysis in *Wilkerson*, we secondly look at the record concerning Mora's actions and perceptions. 173 S.W.3d at 530. This factor in the analysis examines the asserted government agent's reasons for taking action and the goals of the actions. It leads to the question whether Mora believed he was acting as an agent of law enforcement. *Id.* While Mora testified he called police immediately after speaking with appellant, this action is insufficient to make him an agent of police. *Id.* at 533.

Mora's actions with regard to appellant were required by his employment. He testified Gap, Inc. had a written policy requiring that a civil demand notice be completed

any time the prevention officer had contact with persons committing theft in their stores. Mora said if the suspect refuses to sign the notice he would note the refusal on the completed notice, but said he gets a signed demand notice 99% of the time.[5] He testified the store keeps these documents "for our record" but would turn them over to the police or the district attorney on request.[6]

Mora stated the purpose of obtaining the signed civil demand notice is to "seek punitive damages" or "monetary damages." He also acknowledged Gap, Inc.'s policy manual states that other purposes include maintaining "a good rapport" with law enforcement, preventing "defense attorneys" from discrediting the store employee's testimony, and helping prosecutors obtain convictions.

The evidence thus shows that Mora, as an Old Navy loss prevention officer, acted with mixed motives when he obtained appellant's signature on the civil demand notice. The signed notice served the store's purposes of facilitating the return of its merchandise and protecting it from liability for its detention of appellant, while providing a basis for any civil action the store might pursue.

That the store voluntarily provided to police and to the District Attorney the incriminating information it had obtained from appellant does not alone distinguish it from any other crime victim who cooperates with authorities. But Mora's testimony and

---

[5] Mora said that during his almost three years at Old Navy he had never mistakenly accused a customer of shoplifting.

[6] Mora also testified he showed his report, including the completed civil demand notice, to police officers when they arrived at the store in response to his call.

the retailer's policy manual make clear that obtaining a shoplifter's signature on the notice also served the store's purpose of "helping prosecutors obtain convictions." In *Wilkerson*, the Court of Criminal Appeals posed the question, "Were the questions [to the defendant] aimed at gaining information and evidence for a criminal prosecution, or were they related to some other goal?" *Wilkerson,* 173 S.W.3d at 530. Here, the answers are "yes, and yes." Given this evidence, the trial court reasonably could have concluded that Mora did not believe he was acting as an agent of law enforcement, but was serving his employer's interests, even if those interests included facilitating the criminal prosecution of shoplifters. Old Navy's motive to aid in the prosecution of shoplifters does not make it the State's agent when it obtains statements later provided to prosecutors.

Lastly, we examine the record for evidence of appellant's perceptions of the encounter. Appellant did not testify so we have no direct evidence whether she believed she was talking to someone cloaked with the authority of law enforcement. We thus consider the likely beliefs of a reasonable person in appellant's position. *Wilkerson,* 173 S.W.3d at 530-31. Mora was not in uniform[7] and said he identified himself to appellant and Linda as a loss prevention officer for the store. He testified he stopped the women outside the store, told them he needed to "talk to them about the stuff in the purse," and "asked them to step back in the store."

---

[7] Mora testified he is not a peace officer. He indicated he wears "T-shirt, jeans, tennis shoes."

11

Appellant signed the civil demand notice stating her detention by Mora was reasonable, and she does not argue the interview was so menacing as to intimidate her into making a false statement. *Id.*; *see In re Deborah C.,* 635 P.2d 446 (Cal. 1981) (discussing lesser risks of coercive atmosphere in questioning by store detectives). A female store manager was with appellant and Mora in the store office during their encounter. The evidence supports a conclusion a reasonable person in appellant's position would have believed Mora was exactly what he said, a store loss prevention officer, not an agent of law enforcement. *Id.*

As noted, custodial interrogation under *Miranda* is that initiated by law enforcement officers. *Miranda,* 384 U.S. at 444. Our ultimate inquiry here is whether Mora was acting as an "instrumentality" or "conduit" for the police or prosecution when he obtained appellant's signature on the civil demand notice. *Wilkerson*, 173 S.W.3d at 531. The trial court concluded he was not, and the record supports the trial court's conclusion. Accordingly, we resolve appellant's sole issue against her and affirm the judgment of the trial court.

James T. Campbell
Justice

Publish.

12