

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0882-11

**BECKY ELIZONDO, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SEVENTH COURT OF APPEALS
### LUBBOCK COUNTY

**MEYERS, J., delivered the opinion for a unanimous Court**.

### O P I N I O N

Appellant, Becky Elizondo, was charged with theft of fifty to five hundred dollars.

She filed a motion to suppress a written confession obtained by a loss-prevention officer.

After a suppression hearing, the trial court denied Appellant's motion. She appealed,

claiming that there was an agency relationship between the loss-prevention officer and

law enforcement, and thus her statement was inadmissible under Article 38.22 of the

Texas Code of Criminal Procedure. The court of appeals affirmed the trial court's

judgment.  *Elizondo v. State*, 338 S.W.3d 206 (Tex. App.–Amarillo 2011).  We granted Appellant's ground for review to determine whether the court of appeals erred in affirming the trial court's denial of Appellant's motion to suppress the written confession obtained by the loss-prevention officer.  We agree with the court of appeals that no agency relationship existed between law enforcement and the loss-prevention officer, and we will affirm.

## FACTS

Appellant and her friend were shopping in an Old Navy store.  The store's loss-prevention officer, David Mora, noticed that Appellant's friend was carrying a flat purse.  Mora watched the two women part ways inside the store and meet together behind a clothing rack a few minutes later.  Mora then watched between the racks as Appellant's friend, standing shoulder-to-shoulder with Appellant, put items of merchandise into her purse.  The two women, followed by Mora, left the store without paying for the items.  Mora intercepted the women when they were outside the store and asked them to return to the store.  Mora escorted the women to a room, accompanied by a female Old Navy manager, and retrieved the items from the purse.  After retrieving the items, Mora asked Appellant to read and sign a document entitled "GAP INC. CIVIL DEMAND NOTICE,"[1] a document that contained the statement, "I, Becky Abajo Elizondo, have admitted to the theft of merchandise/cash valued at $65.00 from GAP INC., Store No. 6220, located at

---

[1]Gap Inc. is the parent company of Old Navy clothing stores.

6249 Slide Rd. I also hereby acknowledge that my detention on this date was reasonable."

Appellant signed the form, dated it, and completed the address information section. Mora also had Appellant sign a store receipt reflecting the value of the merchandise and took photographs of Appellant and the stolen items. After completing what Mora testified was typical protocol for theft at Old Navy, he called the Lubbock Police Department, and officers came to the store to arrest Appellant and her friend. Before the trial began, the District Attorney's office obtained a copy of Mora's Old Navy report, including the civil demand notice. Appellant filed a motion to suppress the civil demand notice.

## MOTION TO SUPPRESS

The trial court held a hearing on the motion to suppress outside the presence of the jury to consider the admissibility of the civil demand notice taken by Mora. Appellant argued that Mora was required to give *Miranda*[2] warnings when he obtained the civil demand notice because he was engaged in an agency relationship with law enforcement.

Mora testified that he had been a loss-prevention officer at Old Navy for three years and had never worked in law enforcement. He testified that, in those three years, he obtained written confessions in about 99% of the encounters with accused shoplifters. He stated that the written confessions were kept for the store's records, but the store would give a copy of the report to a police officer or attorney upon request. Mora said that the police officer who arrested Appellant did not take a copy of the civil demand notice with

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

him, although he was aware that one existed. Mora testified that the document was not handed over to the District Attorney until a couple of months after Appellant was arrested. Mora explained that, in line with the written policy contained in his manual provided by Gap Inc., his common practice is to ask the apprehended individual to sign the confession, however they may refuse to sign it if they wish. Mora stated that the primary reason for the store's policy requiring all documents to be signed is for punitive or monetary damages associated with the shoplifting incident.

Appellant claimed that, because she was taken to a manager's office and did not believe she was allowed to leave, she was in custody. She also cited cases stating that, if a private individual and law enforcement work together, or a private individual acts to benefit law enforcement, the private individual is required to issue *Miranda* warnings as if he were part of law enforcement.

The State argued that Article 38.22 does not require *Miranda* warnings for written confessions taken by private security personnel and pointed the court to *Oriji v. State*, 150 S.W.3d 833 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). The State asserted that there was no evidence that Mora was acting at the behest of law enforcement or the District Attorney; rather he collected evidence on behalf of Gap Inc.

The trial court denied Appellant's motion to suppress the written confession and entered findings of fact including that Mora was not a peace officer, that the defendant was not in custody, and that the civil demand notice contained no *Miranda* requirements.

The trial court's conclusion of law was that the civil demand notice was not obtained as a result of a custodial interrogation of the defendant by a law enforcement officer. The case proceeded to trial, and Appellant was found guilty of theft of fifty to five hundred dollars and sentenced to 30 days in jail.

## COURT OF APPEALS

On appeal, Appellant argued that the trial court erred in failing to suppress her written confession, claiming that it was obtained in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution, Article 1, Section 10, of the Texas Constitution and Article 38.22 of the Texas Code of Criminal Procedure. The court analyzed the relationship between Mora and law enforcement using the three-factored test from *Wilkerson v. State*, 173 S.W.3d 521 (Tex. Crim. App. 2005). The court considered whether authorities were using Mora for their own purposes and examined records related to Mora's actions and perceptions and Appellant's perceptions of the encounter with Mora. The court determined that Mora did not obtain Appellant's statement pursuant to police practices. *Elizondo*, 338 S.W.3d at 211. The court further concluded that Mora was serving his employer's interests and that a reasonable person in Appellant's shoes would believe that Mora was a loss-prevention officer and not a law-enforcement agent. *Id*. at 212-13. The court of appeals held that the record supported the trial court's admission of the evidence and affirmed the judgment of the trial court.

We granted Appellant's ground for review to consider whether the court of appeals

erred in determining that an agency relationship did not exist between Mora and the police and District Attorney's office.

**ARGUMENTS OF THE PARTIES**

Appellant argues that Mora was in an agency relationship with law enforcement and had apparent authority to act on behalf of law enforcement officers. She contends that officers used Mora to gain un-*Mirandized* confessions because they themselves could not do so. Appellant argues that the purpose of the investigation distinguishes agents from non-agents, but that the perception of the defendant is also relevant. Appellant says that the court of appeals failed to address the agency relationship and did not thoroughly address *Wilkerson*. Appellant contends that Mora's history and continued practice of receiving un-*Mirandized* confessions and handing them over to law enforcement shows that Mora's activities were in tandem with law enforcement. Applying the second factor in *Wilkerson*, Appellant states that Mora's purposes in obtaining the confession were to aid in the prosecution of the case, to maintain a good relationship with law enforcement, and to prevent defense attorneys from discrediting his testimony. Finally, Appellant states that her belief in Mora's authority was reasonable because he presented evidence against her, detained and photographed her, and required her to sign a confession before he had her taken to jail.

Appellant argues that the court of appeals failed to recognize the difference between an incidental relationship, such as the one in *Oriji v. State*, and the continued

complicity of law enforcement in receiving un-*Mirandized* confessions. Appellant argues that Mora's history and continued practice of receiving un-*Mirandized* confessions is a systematic circumvention of the procedural guarantees of *Miranda* and Texas Code of Criminal Procedure Article 38.22. Appellant contends that an agency relationship between Mora and law enforcement is apparent. Finally, Appellant says that *Estelle v. Smith*, 451 U.S. 454 (1981), requires *Miranda* warnings for any statement that is to be used in a criminal proceeding and applies to anyone who gathers information that could someday be used for criminal prosecution.

The State disagrees with Appellant's characterization of *Estelle v. Smith*, stating that *Smith* involved a defendant in a post-arrest setting who was compelled by a court to provide evidence against himself, so *Miranda* warnings were obviously required. However, the State says *Miranda* warnings are not required for all custodial questioning–only for questioning by law enforcement or their agents. The State posits that we should apply the *Wilkerson* factors to the facts of this case to determine whether there is an agency relationship with law enforcement that would require *Miranda* warnings before questioning.

The State says that nothing in the record shows that officers were using Mora as an agent to obtain a statement from Appellant. According to the State, Mora was acting on behalf of a private company and did not even contact the police until he had completed his civil investigation. Mora turned over Appellant's statement because the District

Attorney's office requested it, not because he was acting as an agent of law enforcement. The State says that Mora's primary purpose for questioning Appellant was to conduct a civil investigation for a private company. Mora did not hold himself out as law enforcement, he did not wear a uniform or badge, and he conducted his investigation in the Old Navy manager's office.

The State contends that these factors weigh against a finding that Mora was acting as an agent of law enforcement. The State concludes that, because Mora was not acting as an agent of law enforcement, he was not required to give *Miranda* warnings and Appellant's statement was admissible under Texas Code of Criminal Procedure Article 38.22, Section 5.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress under an abuse-of-discretion standard. When the trial court's findings of fact are based on an evaluation of credibility and demeanor, we afford almost total deference to the trial court's determination of facts that are supported by the record. We review *de novo* the trial court's application of the law to the facts and uphold the trial court's ruling if it is supported by the record and is correct under any theory of law applicable to the case. *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000).

## STATUTES AND CASE LAW

In *Miranda v. Arizona*, the United States Supreme Court held that, in order to

ensure that criminal suspects in custody are aware of their rights under the United States Constitution, police must give formal warnings before suspects are interrogated. 384 U.S. 436. *Miranda* defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody." *Id.* at 444. Texas Code of Criminal Procedure Article 38.22 provides that a written statement made by an accused as a result of custodial interrogation is inadmissible if the accused did not receive *Miranda* warnings. The issue here is whether *Miranda* applies when questioning is initiated by someone other than law enforcement.

We introduced a test in *Wilkerson v. State* to determine whether non-law-enforcement state agents are required to give *Miranda* warnings. In *Wilkerson*, a Child Protective Services investigator interviewed a father who was in police custody for injury to a child. 173 S.W.3d 521. The CPS worker needed to discuss the placement of Wilkerson's children in foster care and did not give *Miranda* warnings prior to speaking with him. During the interview, Wilkerson told the CPS worker about spanking his son, and this information was included in the CPS report that was forwarded to the police. We held that non-law-enforcement state agents are required to give *Miranda* warnings only when acting in tandem with the police to gather evidence for a criminal prosecution. *Id.* at 523. To determine if an agency relationship exists, the courts must examine the entire record and consider three factors: (1) the relationship between the police and the potential police agent, (2) the interviewer's actions and perceptions, and (3) the defendant's

perceptions of the encounter. *Id.* at 530-31. The test helps courts determine whether the interviewer was acting as an instrumentality or was "in cahoots" with the police or prosecution. *Id*. at 531.

We concluded that Wilkerson's statements to the CPS worker were admissible because the CPS worker was not acting as an agent of law enforcement; rather she visited Wilkerson in jail as part of a routine CPS procedure. *Id*. at 532. Because there was nothing in the record to indicate that the police knew about the interview, that they spoke to the CPS worker before the interview, or that they solicited her to gain information from Wilkerson, we determined that the CPS worker was not acting as an agent of law enforcement. *Id*. at 533.

The facts of *Oriji v. State* are very similar to the case before us. In *Oriji*, the court admitted into evidence a written confession of theft made without *Miranda* warnings to a Foley's loss-prevention officer. 150 S.W.3d at 833. The court of appeals concluded that, because the loss-prevention officer did not elicit the incriminating information from the defendant at the request of the police, he was not engaging in a custodial interrogation requiring *Miranda* warnings. *Id*. at 836-837. The court stated that "[p]rivate citizens, even security guards, are not ordinarily considered 'law enforcement officers.'" *Id*. at 836. Because law enforcement did not know of or initiate the loss-prevention officer's effort to obtain a confession, the statement was not for law enforcement purposes. *Id*. at 837.

**ANALYSIS**

The law does not presume an agency relationship, and the party alleging such a relationship has the burden of proving that it exists. *Wilkerson*, 173 S.W.3d at 529. Appellant argues that there was an agency relationship between Mora and law enforcement because of: (1) the complicity of law enforcement as evidenced by the continuing relationship between Mora and the police, (2) the prosecutorial purpose of Mora's investigations, and (3) Appellant's reasonable belief that Mora was acting under the veil of authority. Because of this relationship, Appellant argues, *Miranda* warnings were required in order for her written confession to be admissible. To determine if Mora was working as an agent of law enforcement, we will apply the three *Wilkerson* factors to the facts of this case.

*The Relationship Between The Police and the Potential Police Agent*

First, we look for information about the relationship between the police and Mora. Mora stated that every time he apprehended shoplifters he asked them to fill out a civil demand notice for Old Navy's records, and that 99% of the time the accused shoplifter signed the document. While officers may have been aware that Old Navy had a policy of obtaining a civil demand notice, there is no indication that this knowledge led to a calculated practice between the police and the store's loss-prevention staff. The police had not even been contacted when Mora obtained Appellant's confession, so they clearly did not instruct Mora to get specific information or give him questions to ask Appellant.

The police were not using Mora to get information from Appellant that they could not lawfully obtain themselves, and neither the police nor the DA's office asked Mora to obtain an admission of guilt to use in a criminal proceeding.

***The Interviewer's Actions and Perceptions***

The second part of the *Wilkerson* test evaluates the purpose of the interview. In *Oriji*, the record showed that a written confession was obtained in order to further the store's need to prevent theft and was not for law enforcement purposes. 150 S.W.3d at 837. Similarly, in *Wilkerson*, we concluded that the CPS worker was not an agent of law enforcement because her questioning of the defendant was part of her duty regarding the placement of his children in foster care. 173 S.W.3d at 532. Here, Mora's reason for obtaining the civil demand notice was to adhere to the policies in the Gap Inc. loss-prevention manual. Although Gap Inc.'s policy manual says that theft incident reports serve to aid in criminal prosecutions and convictions, help maintain a good rapport with law enforcement, and prevent defense attorneys from discrediting the testimony of the loss-prevention staff, those are not the primary purposes of the report. The manual says reports, which should include a civil demand notice, are necessary to record and preserve observations, details, and information about the events surrounding the theft, and it says that the reports are for company use and records only. The civil demand notice states that the law permits merchants to recover civil monetary damages and that the civil penalties are not intended to compromise any criminal action the store may seek as a result of the

shoplifting incident. While Mora did help build a case that led to Appellant's arrest, and his testimony indicates that the purpose of obtaining a written confession goes beyond merely civil reasons, his primary duty was to document the incident for company records. The record indicates that Mora believed that he was following Old Navy policy and acting on the store's behalf, not acting as a police agent.

### The Defendant's Perceptions of the Encounter

Under the third *Wilkerson* factor, because there is nothing in the record from the suppression hearing regarding Appellant's perception of her encounter with Mora, we consider whether a reasonable person in Appellant's position would believe that Mora was a law-enforcement agent. See *Id*. at 531. Mora testified that he was not wearing a uniform when he approached Appellant and her friend outside the store. He informed them that he was a loss-prevention officer for Old Navy, escorted them to the store manager's office, and asked them to fill out paperwork about the theft. A female Old Navy manager was present during the encounter, and the door to the manager's office was left ajar. Mora printed out an Old Navy store receipt for the items found in Appellant's purse and photographed Appellant and the stolen items. Under these circumstances, we cannot say that a reasonable person in Appellant's position would believe that Mora was a law-enforcement agent. There was nothing in the record indicating that Mora appeared to Appellant to be cloaked with the actual or apparent authority of the police. See *Id*. at 530.

**CONCLUSION**

We conclude that Mora was not acting in tandem or "in cahoots" with the police. The fact that Mora eventually gave the District Attorney's office a copy of Appellant's written confession does not transform him into an agent of law enforcement. See *Wilkerson*, 173 S.W.3d at 533. Because Mora was working on a path parallel to, yet separate from, the police, *Miranda* warnings were not required in this situation. See *Wilkerson*, 173 S.W.3d at 529. The record supports the trial court's decision to deny Appellant's motion to suppress the written confession and the court of appeals did not err in affirming the trial court's denial of the motion to suppress. The judgment of the court of appeals is affirmed.

Meyers, J.

Delivered: November 7, 2012

Publish