**AFFIRM; and Opinion Filed May 28, 2013.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-12-00457-CR**

**NADA EID BADR, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 4**
**Collin County, Texas**
**Trial Court Cause No. 004-81699-2011**

## MEMORANDUM OPINION

Before Justices Lang-Miers, Murphy, and Fillmore
Opinion by Justice Murphy

Nada Eid Badr was convicted of the offense of theft of property valued at an amount greater than or equal to fifty dollars but less than five hundred dollars, a Class B misdemeanor. *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(2)(A)(i) (West Supp. 2012). The trial court found appellant guilty and sentenced her to ninety days in jail, suspended for six months of community supervision, and a $200 fine. Appellant contends the trial court erred by admitting the arresting police officer's testimony that appellant stated, prior to any *Miranda* warnings, "she did something wrong" and "took property without paying for it." We affirm.

This is a shoplifting case, which was tried to the court. The State presented two witnesses—the loss-prevention officer who observed appellant take merchandise from the Dillard's department store where he worked and the arresting officer from the Frisco Police Department, John Coduti. Appellant also testified, and the videos from the store's surveillance cameras were admitted as evidence. Coduti's testimony regarding his first encounter with appellant is at issue.

Coduti testified to his background and the facts leading to his meeting with appellant. He received a dispatch call about "a shoplifter in custody at the Dillard's." When he arrived at the store, he contacted the loss prevention officer and then met with appellant. When he met appellant, he "asked her why [he] was here." At this point in Coduti's testimony, appellant's counsel asked to take Coduti on voir dire based on appellant's being in "custody." Following voir dire questioning by both counsel, appellant's attorney argued that appellant was "actually detained" and "should have been mirandized." The trial court overruled appellant's objection and allowed the following testimony:

> Q. So, after arriving, you met with the suspect?
>
> A. Yes, I did.
>
> Q. Did she say anything to you?
>
> A. Yes, after I asked her why I was here, she said she did something wrong. I then said, "What?" She said she took property without paying for it.

Appellant argues these statements by appellant were custodial statements and should have been suppressed because appellant had not been given *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). She also asserts the error in admitting the statements was not harmless beyond a reasonable doubt.

Whether appellant was in "custody" for purposes of *Miranda* presents a "'mixed question of law and fact.'" *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007) (quoting *Thompson v. Keohane*, 516 U.S. 99, 112–13 (1995)). We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's findings are based on an evaluation of credibility and demeanor. *Id*. at 526–27. We also afford the same deference to mixed questions of law and fact if resolving those questions turns on an evaluation of credibility and demeanor. *Id*. We review de novo all other mixed questions of law and fact. *Id*. at 527.

*Miranda* warnings are required prior to statements made during custodial interrogation before the statement may be admitted as evidence in the accused's trial. *Miranda*, 384 U.S. at 444–45. "Custodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444; *see also Gardner v. State*, 306 S.W.3d 274, 293–94 (Tex. Crim. App. 2009), *cert. denied*, 131 S. Ct. 103 (2010). A person is in "custody" if, under the circumstances, "a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)); *see also Herrera*, 241 S.W.3d at 525. The reasonable person standard presupposes the person is innocent. *Dowthitt*, 931 S.W.2d at 254. The subjective intent of the law enforcement official is irrelevant unless the officer's intent is communicated or manifested in some way to the suspect. *Id*. (citing *Stansbury*, 511 U.S. at 325).

The Texas Court of Criminal Appeals has identified at least four general situations that may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way; (2) when a law enforcement officer tells the suspect he cannot leave; (3)

when law enforcement officers create a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted; and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect he is free to leave. *Gardner*, 306 S.W.3d at 294; *Dowthitt*, 931 S.W.2d at 255. For purposes of the first three situations, the level of restriction must be to the degree associated with an arrest as opposed to an investigative detention. *Dowthitt*, 931 S.W.2d at 255. In the fourth situation, the officer's knowledge of probable cause to arrest must be manifested to the suspect, and satisfaction of this factor does not automatically establish custody. *Id.*

In our analysis, we determine whether a person is in custody on an ad hoc basis considering all the objective circumstances. *Herrera*, 241 S.W.3d at 532; *Dowthitt*, 931 S.W.2d at 255. We consider whether, given those circumstances, a reasonable person would have felt he was not at liberty to terminate the interrogation and leave. *Herrera*, 241 S.W.3d at 532. The record as a whole must "clearly establish" the defendant's statement was the product of custodial interrogation. *Id.* at 526 (quoting *Wilkerson v. State*, 173 S.W.3d 521, 532 (Tex. Crim. App. 2005)). The accused bears the burden to prove a statement was the product of custodial interrogation. *See Gardner*, 306 S.W.3d at 294; *Herrera*, 241 S.W.3d at 526.

Appellant argues in this case that she had been taken into custody prior to arrival of Coduti, the police officer. She asserts that Coduti was going into a situation where the suspect was in custody and not free to leave; accordingly, he was required to give *Miranda* warnings.

The procedural safeguards under *Miranda* do not apply to all custodial questioning. *See Wilkerson*, 173 S.W.3d at 527. They apply only to custodial interrogation by law enforcement officers or their agents. *Id.* To determine whether non-law enforcement state agents are required to give *Miranda* warnings, we examine the entire record, considering (1) the relationship

between the police and the potential police agent, (2) the interviewer's actions and perceptions, and (3) the defendant's perceptions of the encounter. *Elizondo v. State*, 382 S.W.3d 389, 394 (Tex. Crim. App. 2012) (citing *Wilkerson*, 173 S.W.3d at 530–31). When a state-agency employer is working on a path parallel to, yet separate from, the police, *Miranda* warnings are not required. *Wilkerson*, 173 S.W.3d at 529. Compliance with *Miranda* is necessary only if those once-parallel paths converge and the police and state agent are investigating a criminal offense in tandem. *Id*. The person alleging the existence of an agency relationship has the burden of proof, and no presumption of agency exists. *Id*.

Specific to the issue before this Court, the Texas Court of Criminal Appeals recently addressed the question of whether an agency relationship existed between law enforcement and a company's loss-prevention officer and determined that the officer was not working in tandem with the police. *Elizondo*, 382 S.W.3d at 396. In *Elizondo*, a retail store's loss-prevention officer obtained a written confession from a woman intercepted leaving the store with merchandise and later delivered the statement to the district attorney. *Id*. at 391. Because the defendant failed to prove the existence of an agency relationship between the loss-prevention officer and law enforcement, the confession was not suppressed. *Id*. at 396; *see also Oriji v. State*, 150 S.W.3d 833, 836–37 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (concluding under facts of case written statement taken by private security personnel did not require *Miranda* warnings).

Appellant argues she was in custody when Coduti arrived. She relies on threats that the store would call social services to pick up her children and she was told the police were on their way. She also says she was "yelled-at" and intimidated by the store manager. Yet she did not attempt to prove, nor does she argue, the store manager and loss-prevention officers were agents

of law enforcement. Instead, she focuses on Coduti's reference to the dispatch call indicating a shoplifter was in "custody" at Dillard's. Appellant agrees the subjective views of the interrogating officer are not relevant to the custodial interrogation question, but she asserts Coduti's statement is relevant because it is an objective assessment. She likens this case to *State v. Wagner*, No. 05-96-00587-CR, 1997 WL 746123, at *3–6 (Tex. App.—Dallas Dec. 3, 1997, no pet.) (not designated for publication).

In *Wagner*, this Court concluded in a shoplifting case that the store employees were not acting as agents of the State and there was no basis for suppressing any evidence obtained prior to the arrival of the police. *Id*. at *7. Regarding custodial interrogation, we observed in that case there was "no doubt under [the suspect's] account she was subject to a custodial interrogation *after the arrival of the police*." *Id*. (emphasis added). The Court added that custodial interrogation is questioning "initiated by a law enforcement officer 'after a person has been taken into custody *or otherwise deprived of his freedom of action in any significant way*.'" *Id*. (quoting *Burns v. State*, 807 S.W.2d 878, 882 (Tex. App.—Corpus Christi 1991, pet. ref'd), *abrogated on other grounds by Nguyen v. State*, 292 S.W.3d 671 (Tex. Crim. App. 2009)). We emphasized in *Wagner* that the officer's questioning about the facts of the alleged crime "far exceeded any incidental interrogation normally attendant to arrest and custody." *Id*.

Coduti's questioning of appellant, quoted above, did not reference a crime. He asked only why he was there, and appellant responded "she did something wrong" and "she took property without paying for it." Regarding the events leading up to these statements, Coduti testified about the dispatch call and his arrival at the store. When he arrived, he "made contact" with the loss prevention officer. He then met with appellant and asked her why he was there. Coduti also testified that at the time he arrived at the store, appellant was not in police custody,

under arrest, or handcuffed. He said she was being detained in the loss prevention office. He did say she was not free to leave and explained that was because the loss prevention officer had detained appellant to recover the store property and Coduti was there to investigate the allegation of theft. He said he "at least" needed to speak to "the other side to figure out what's going on." He testified appellant did not appear to have difficulty understanding him when he spoke with her, she offered no alternative explanation, and she did not say she was distracted by her children. He did not know how long she had been in the office or what had been said to her before he arrived.

From these facts we know Coduti did not tell appellant she was not "free to leave" or manifest any probable cause to arrest her. *See Dowthitt*, 931 S.W.2d at 255. Regarding the question of whether appellant was physically deprived of her freedom of action in any significant way, the surveillance video shows appellant walking voluntarily to the store office with the store manager and loss-prevention officers. She was never handcuffed. Coduti testified he was investigating an alleged theft and wanted to hear both sides of the story. Appellant did not testify she was told by Coduti she could not leave; she also said she was attempting to negotiate payment for the property she had taken.

Custody for purposes of *Miranda* depends entirely upon the objective circumstances of the interrogation, not on the subjective views of the interrogating officer or the person being questioned. *See Stansbury*, 511 U.S. at 325; *Dowthitt*, 931 S.W.2d at 254. The objective circumstances of the interrogation here, which include the nature of the questions, do not show custodial interrogation at the time Coduti asked appellant why he was there. The record as a whole must "clearly establish" appellant's statement was the product of custodial interrogation. *Herrera*, 241 S.W.3d at 526. Deferring to the trial court's determination of the facts that turn on

credibility and viewing the objective circumstances of Coduti's questions, we conclude appellant did not meet her burden to prove her statements were the product of custodial interrogation. *See Gardner*, 306 S.W.3d at 294; *Herrera*, 241 S.W.3d at 526.

Even if we determined appellant was in custody under the unique facts of this case, we would conclude based on the entire record that any constitutional error in admitting the statements was harmless beyond a reasonable doubt. *See* TEX. R. APP. P. 44.2(a).

Jacob Ramsey testified he was a camera operator and loss prevention officer for Dillard's on February 16, 2011, when he observed a woman, later identified as appellant, via closed circuit TV in an area known for high theft. He saw her take two items of clothing, lay them over the top rail of her stroller, pull the hanger and some plastic off the clothes, and conceal the items in the hood compartment of the stroller. He watched appellant proceed to the second floor of the store and the mall entrance. When appellant saw some store managers standing at the door, "she doubled back." She passed five to ten registers or points of sale as she left with the concealed merchandise. He described her children as looking "fine" and acknowledged he did not know how they acted during the interval when they were not on the video. After she exited, another Dillard's loss prevention officer and manager stopped appellant outside the store. They brought appellant back in the store and notified the Frisco Police Department and appellant's husband. Copies of the paperwork prepared by the Dillard's personnel and the surveillance videos were admitted as exhibits.

Appellant also testified. On February 16, 2011 she was in the process of applying for United States citizenship and had been to the immigration office that morning. She specifically had been cautioned not to do anything illegal. She said she intended to buy the merchandise she took from the store and thought she could take the clothes home, try them, and return them if

they did not fit. She said she went to the children's department after leaving the area where she was videotaped and was there about thirty minutes. She testified that when she went to the second floor of the store, her children ran from the stroller in different directions. After she "rounded up" her kids, they "started to whine" and "wanted to go eat rice." She put them in the stroller and headed for the exit. When she left the store, a store employee came, flipped the cover, and took out the clothes. Appellant said she wanted to pay for the clothes, and the person said "Sure, you do." She was taken to a small room and told social services could be called, but appellant could call her husband to take the children. When appellant tried to explain the situation, a woman told her not to blame the children. The woman told her "you did a mistake." When appellant later asked "what are we waiting on now," the woman said the police would be there soon. Appellant also asked to talk to the manager "to try to work something out," because her daughter had autism and could not "go without me." The woman told appellant, "You take your choice." The manager also came inside the room, and appellant said "they" started to shout at appellant in front of her children. She said she was shocked and did not grasp any word of what was said.

Appellant said she was not confessing when she told Coduti she "had done a bad thing." She also denied she had told Coduti she intended "not to pay" for the property. On cross-examination, appellant agreed she did not offer any explanation or mention to Coduti that the children were acting unruly.

Because appellant testified at trial, her statements to Coduti were admissible for impeachment purposes. *See Harris v. New York*, 401 U.S. 222, 226 (1971) (holding statement given in violation of *Miranda* could be offered for purposes of impeaching defendant's testimony); *see also Herrera*, 241 S.W.3d at 525 n.18. She denied admitting she told Coduti she

intended to take the property without paying. Significantly, her actual statements were that she had done "something wrong" and had taken "property without paying for it." These facts were not disputed—she took the property without paying for it and that was wrong. Only appellant's intent was in issue.

Regarding appellant's intent, the trial court viewed the videos prior to rendering its verdict. The videos alone were sufficient for a reasonable fact finder to find appellant guilty beyond a reasonable doubt. Considering this evidence and Ramsey's testimony described above, any error in allowing the statements—which admitted the undisputed facts in the case—was harmless beyond a reasonable doubt. *See* TEX. R. APP. P. 44.2(a).

We overrule appellant's issue and affirm the trial court's judgment.


<u>/Mary Murphy/</u>
MARY MURPHY
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

120457F.U05

- 10 -



# Court of Appeals
# Fifth District of Texas at Dallas

**JUDGMENT**

NADA EID BADR, Appellant

No. 05-12-00457-CR　　　V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 4, Collin County, Texas
Trial Court Cause No. 004-81699-2011.
Opinion delivered by Justice Murphy.
Justices Lang-Miers and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 28th day of May, 2013.

/Mary Murphy/

MARY MURPHY
JUSTICE