

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-22-00321-CR
_____

ARMOND JORDAN SMITH, APPELLANT

V.

THE STATE OF TEXAS

On Appeal from the 46th Judicial District Court
Hardeman County, Texas,
Trial Court No. 4506, Honorable Dan Mike Bird, Presiding

August 31, 2023

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Appellant, Armond Jordan Smith, was charged by indictment with the murder of Anaja Griffin-McNeal. After he was found competent to stand trial, a jury found him guilty of the charged offense and assessed punishment at confinement in prison for 75 years. Appellant challenges his conviction through six issues. We affirm.

**Background**

**The Death of Anaja Griffin-McNeal**

On January 14, 2021, Appellant and Anaja Griffin-McNeal were seen sitting in a Dodge Charger at the gas pump of a Quanah, Texas, convenience store. After they remained for more than 30 minutes, employees contacted law enforcement, who instructed Appellant and Anaja[1] to go to a nearby truck stop if they intended to sleep. An officer observed the vehicle parked at the truck stop a few hours later.

The next morning, Deputy Craig Hodgkins with the Hardeman County Sheriff's Department responded to a request for a welfare check on a Dodge Charger at the truck stop. After he received no response to his knock on the car's window, Hodgkins opened the door and found Anaja's body in the driver's seat. Hodgkins testified he believed Anaja had suffered a fatal gunshot to the head.

**Appellant's Inculpatory Statements**

Hodgkins found Appellant stirring in the passenger seat. Appellant appeared to be suffering from a self-inflicted gunshot wound to the head. EMS was called, and Appellant was able to stand. He was handcuffed. Hodgkins found a handgun on the front passenger side floorboard near where Appellant had been.

Appellant was transported to the emergency department of Hardeman County Hospital. As he was being moved from the ambulance's stretcher to a bed, Appellant

---

[1] For clarity, we will refer to the decedent, Anaja Griffin-McNeal, and her cousin, Marquise Griffin, by their first names.

2

twice blurted out to the hospital's staff, "I shot them, I did it." Appellant also allegedly told a treating nurse practitioner, "I shot her."

Appellant was transferred to University Medical Center in Lubbock. During a psychiatric interview, Appellant told an evaluator that his gunshot wound was self-inflicted and that "he wanted to end his life with a gunshot."

**The Forensic Investigation**

Two officers with the Texas Rangers conducted an investigation at the truck stop about 90 minutes after Anaja's body was discovered. The Rangers saw no evidence of an attempted robbery or of a third party's involvement. The two took photos and collected DNA from blood stains on the exterior of the vehicle and from the parking lot.

Inside the vehicle, the Rangers recovered the Glock handgun discovered by Hodgkins, as well as three casings and two spent bullets. One bullet was recovered from inside the vehicle's console; the other was discovered beneath the driver's seat. The Rangers also found a "perforating defect" in the car's roof where they believe a third bullet passed. A forensic scientist with the DPS crime lab opined that the recovered projectiles were fired from the gun found in the vehicle.

Four DNA samples from the recovered handgun were all found to originate from a single individual. The jury heard testimony that Anaja was not the contributor of the DNA,

but that Smith was the likely contributor. Other samples taken at the crime scene similarly suggested that Smith was the likely contributor of the DNA.

Based on his investigation, Ranger Matt Kelly opined that Anaja was asleep, leaning on her right hip with her head resting atop her arm on the vehicle's center console, when she was shot. A medical examiner with the Tarrant County Medical Examiner's Office who performed Anaja's autopsy opined that the bullet entered Anaja's right forehead, traveled through the corpus callosum connecting the two brain hemispheres, and exited on the back left side of her head/neck. Soot and stippling observed near the entrance wound suggested the shot was fired from a distance of one to two feet from Anaja's body. The pathologist concluded that the manner of Anaja's death was a homicide caused by a gunshot wound to the head.

## Analysis

### Sufficiency of the Competency Trial Evidence

In his first issue, Appellant contends the evidence was insufficient to support a jury's finding that Appellant was competent to stand trial. Under Texas law, a defendant is presumed competent to stand trial and bears the burden of proving by a preponderance of the evidence that he is incompetent. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(b); *Freeman v. State*, No. 07-10-00219-CR, 2011 Tex. App. LEXIS 7759, at *12 (Tex. App.— Amarillo Sept. 28, 2011, pet. ref'd) (mem. op., not designated for publication).

A defendant is incompetent to stand trial if he does not have "sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding" or possess "a rational as well as factual understanding of the proceedings against the

4

person." TEX. CODE CRIM. PROC. ANN. art. 46B.003(a). Evidence relevant to competence to stand trial probes whether the defendant is capable of: (1) understanding the charges against him and the potential consequences of the pending criminal proceedings, (2) disclosing to counsel pertinent facts, events, and states of mind, (3) engaging in a reasoned choice of legal strategies and options, (4) understanding the adversarial nature of criminal proceedings, (5) exhibiting appropriate courtroom behavior, and (6) testifying. *Freeman,* 2011 Tex. App. LEXIS 7759, at *12–13 (citing TEX. CODE CRIM. PROC. ANN. art. 46B.024). We will reverse the jury's competency determination only if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Meraz v. State,* 785 S.W.2d 146, 155 (Tex. Crim. App. 1990).

We disagree with Appellant's argument that the jury's competency finding was against the great weight of the evidence or unjust. The evidence supporting Appellant's competence came, in part, from the testimony and expert report of Timothy Nyberg, Ph.D., a psychologist. Consistent with each of the factors articulated in *Freeman*, Nyberg opined that despite Appellant's head injury from the gunshot, Appellant demonstrated sufficient capacity to understand the proceedings and communicate with his attorney. We overrule Appellant's first issue.

**Sufficiency of the Evidence Supporting Guilty Verdict**

By his second issue, Appellant contends the evidence is insufficient to support the verdict finding him guilty of murder. The Texas Penal Code provides that a person commits the offense of murder if he intentionally or knowingly causes the death of an

5

individual. TEX. PENAL CODE ANN. § 19.02(b)(1). At trial, the court charged the jury with an instruction tracking the statute.

Our sufficiency determination is directed by the familiar standard of *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).[2] Reviewing the evidence under the proper standard, we conclude the evidence shows that on January 14, 2021, Anaja was killed by a gunshot to the head fired at close range. Opinion testimony told the jury about how the deadly bullet traveled through Anaja's head. Appellant and Anaja were the only occupants of the vehicle in which her body was found. Spent bullets from the recovered gun were found in the vehicle; DNA on the gun was linked to Appellant.

In addition, the jury heard testimony that Appellant made multiple admissions of being the shooter and that his own gunshot wound was self-inflicted. Based on this evidence, we conclude a reasonable jury could have found beyond a reasonable doubt that Appellant intentionally or knowingly caused the death of Anaja. Appellant's second issue is overruled.

**Evidence Regarding Appellant's Confessions to Health Care Workers**

By his third and sixth issues, Appellant argues the statements he made at the Hardeman County Hospital were the product of custodial interrogation conducted in violation of the United States Constitution's protections against self-incrimination[3] and

---

[2] For a more in-depth discussion, *see Teague v. State*, 626 S.W.3d 438, 442 (Tex. App.—Amarillo 2021, no pet.).

[3] See *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

6

Article 38.22 of the Texas Code of Criminal Procedure.[4]  Appellant's complaint pertains to Appellant's three statements that he "shot them" and/or "shot her."  Hodgkins testified that at the crime scene, Appellant had been handcuffed and was "being detained" before being transported to the hospital.

In his third issue, Appellant reasons that because he was never warned of the right to remain silent or the right to counsel after he was handcuffed, the trial court abused its discretion[5] in admitting the statements into evidence.  We disagree.  Our Court of Criminal Appeals has held that being placed in custody does not trigger a defendant's right to make incriminating statements with impunity.  *See Elizondo v. State*, 382 S.W.3d 389, 394 (Tex. Crim. App. 2012); *Wilkerson v. State*, 173 S.W.3d 521, 527 (Tex. Crim. App. 2005). Rather, the rights afforded defendants against self-incrimination only pertain to instances in which the defendant is under custodial interrogation.  In *Miranda*, the United States Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody."  384 U.S. at 444. Similarly, Texas Code of Criminal Procedure Article 38.22 applies to statements made by an accused as a result of custodial interrogation.  In other words, these protections generally apply "only to questioning by law enforcement officers or their agents." *Wilkerson v. State*, 173 S.W.3d 521, 527 (Tex. Crim. App. 2005).

It is true that the health care workers who heard Smith's outbursts about being the shooter may have been government employees (i.e., employees of Hardeman County).

---

[4] *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a).

[5] Again, the standard for assessing the trial court's discretion in admitting such evidence is well-established.  *See Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021).

7

But that does not automatically make them agents of the state for purposes of our analysis. *Wilkerson*, 173 S.W.3d at 528. When it held that employees with Child Protective Services were not necessarily agents of the state for *Miranda* or Article 38.22 purposes, the Court of Criminal Appeals had this to say:

> Our law recognizes that different types of state employees serve different roles. It is law enforcement's job to ferret out crime, investigate its commission, arrest the perpetrator, and gather evidence for a possible prosecution. In pursuing this legitimate goal, the police might be tempted to use physical coercion or other illegitimate methods to gather a confession. The Supreme Court was concerned with this particular power imbalance and the resulting inherently coercive interactions when it devised the *Miranda* warnings.

*Id.* at 528.

In the present case, there is no evidence that the health care workers to whom Appellant made his remarks were serving as law enforcement officers. There is likewise no evidence they were acting in tandem or "in cahoots" with law enforcement. *Elizondo*, 382 S.W.3d at 394 (applying three-part test announced in *Wilkerson* to hold that loss prevention officer was not cloaked with actual or apparent authority to investigate on behalf of police).[6] We therefore overrule Appellant's third issue.

In his sixth issue, Appellant argues the trial court abused its discretion[7] when refusing to include in the jury charge instructions pertaining to his hospital statements as the person who "shot them" or "shot her." The trial court refused each of Appellant's

---

[6] The three factor test looks at (1) the relationship between the police and the potential police agent, (2) the interviewer's actions and perceptions, and (3) the defendant's perceptions of the encounter. *Id.* (citing *Wilkerson*, 173 S.W.3d at 530–31).

[7] See *Wesbrook v. State,* 29 S.W.3d 103, 122 (Tex. Crim. App. 2000) (discussing standard of review).

requested instructions, explaining it previously found the statements "were noncustodial statements, and that they were admissible." For the reasons discussed above, we agree with the trial court. We therefore conclude the trial court properly exercised discretion in denying Appellant's requested instructions. Appellant's sixth issue is overruled.

**Admission of Hearsay Statement as Excited Utterance**

In his fourth issue, Appellant argues the trial court abused its discretion in allowing Marquise, to testify of Anaja's hearsay during a one-to-two-minute telephone call in November 2020. Anaja and Appellant began dating in the late summer of 2020 when she moved to Houston to attend college. During the November telephone call with Marquise, Anaja appeared to be very upset:

> She was loud, she was yelling, her voice was trembling. She was -- I don't want to say hyperventilating, but she was -- she was breathing heavily like -- you know, she was very -- her voice was frantic. It was shaky. It was -- it was -- she was crying. It was obvious.

Anaja told Marquise she was in fear of Appellant. Then, apparently because Appellant returned to her presence, Anaja terminated the call. At a hearing outside the presence of the jury, the trial court overruled Appellant's hearsay objection, finding it met the exception as an excited utterance under Texas Rule of Evidence 803(2).

We hold that the trial court did not reversibly err in permitting the jury to hear this testimony. The excited utterance exception pertains to statements "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." TEX. R. EVID. 803(2). The critical test here is whether Anaja was still dominated by the emotion caused by the startling event when she spoke. *See Coble v. State,* 330

9

S.W.3d 253, 294 (Tex. Crim. App. 2010). The context of the call reasonably suggested to the trial court, as it did to Marquis, that Anaja was communicating fears related to the condition she was under at the time. Marquis' description of Anaja's voice – loud, trembling voice, frantic, crying, and shaking, all support a conclusion that Anaja was still under the stress of excitement caused by her argument with Appellant. We believe this evidence falls within the zone of reasonable disagreement about whether the excited utterance exception was appropriate. Appellant's fourth issue is overruled.

**Rule 403 Objection to Medical Examiner's Opinions**

By his fifth issue, Appellant assert's that the probative value of the medical examiner's testimony as to the manner and cause of Anaja's death was substantially outweighed by its prejudicial effect.

Stacy Murthy, M.D., testified that the cause of Anaja's death was a gunshot wound to the head and the manner of death was a homicide. Appellant objected to these opinions claiming they were more prejudicial than probative. The trial court overruled Appellant's Rule 403 objection finding the probative value of Dr. Murthy's testimony outweighed the danger of unfair prejudice.

Texas Rule of Evidence 403 provides in part that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." TEX. R. EVID. 403. "'Probative value' refers to the inherent probative force of an item of evidence -- that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation -- coupled with the proponent's need

for that item of evidence. *Gigliobianco v. State,* 210 S.W.3d 637, 641 (Tex. Crim. App. 2006).

In this case, the medical examiner's opinions were relevant to establishing the State's theory that Anaja died of a gunshot fired at close range from within the vehicle. Appellant offers nothing to support his argument that "[t]he Court will see upon reviewing the record that the probative value of the evidence was substantially outweighed by the prejudicial effect to Appellant." Nor do we find any: Rule 403 specifically seeks to address the danger of *unfair* prejudice. Otherwise, any evidence suggesting a defendant's guilt would be subject to the rule.

The trial court did not abuse its discretion in admitting the evidence. Appellant's fifth issue is overruled.

## Conclusion

Having overruled each of Appellant's issues, we affirm the judgment of the trial court.

Lawrence M. Doss
Justice

Do not publish.

11