

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. PD-0997-12 and PD-0998-12

### FELIX ARGUELLEZ, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### DEWITT COUNTY

JOHNSON, J., delivered the opinion of the Court in which PRICE, WOMACK, HERVEY, COCHRAN, and ALCALÁ, JJ., joined. KEASLER, J., filed a dissenting opinion in which KELLER, P.J., and MEYERS, J., joined.

## O P I N I O N

Appellant was charged with multiple offenses of improper photography, a state-jail felony.[1] The trial court denied his motions to suppress, and appellant then plead *nolo contendere* to both indictments. After a punishment hearing, the trial court sentenced him to twenty months' confinement in state jail and imposed a $2,500 fine in each case, with the sentences to run

---

[1] Appellant was charged by two indictments, each one alleging a different date of commission for the offenses, July 30, 2009 and August 4, 2009. Each indictment included two counts, with each count alleging a different named complainant, producing a total of four named complainants.

concurrently.

On direct appeal, appellant's sole issue asked, "Does merely taking photographs at a public pool give police reasonable suspicion to stop appellant's vehicle?" The court of appeals overruled that single issue and affirmed the trial court's judgments. *Arguellez v. State*, 2012 Tex. App. LEXIS 4373, No. 13-11-00266-CR and No. 13-11-00267-CR (Tex. App.—Corpus Christi-Edinburg, delivered May 31, 2012).

We granted review of one of two grounds that appellant raised in his petition for discretionary review: "Is 'crime afoot' when a person takes pictures at a public pool permitting a police officer to conduct an investigative detention?" We conclude that crime was not afoot, sustain that ground, and reverse the court of appeals's judgments.

### I. Facts

At a hearing on appellant's motions to suppress, the testimony of the two arresting officers reflects that on July 30, 2009, appellant was observed taking photographs of patrons at a municipal swimming pool at a public park. The subjects of these photographs included women and children who were wearing swimming attire. Police were notified, and patrol officers responded. The dispatched call described an unknown man in a suspicious vehicle, specifically "a male subject in a tan Ford Taurus taking photos at the [c]ity pool and they said he was parked beside the fence." The responding officer testified that he saw a vehicle fitting that description–a tan or brownish Taurus– "pulling away from the side of the pool." The officer followed the car, received information that the police dispatcher still had the informant on the phone, and confirmed that the patrol car was behind the correct vehicle. He testified that, based on the information at hand, he made a traffic stop of that vehicle, identified appellant as the driver of that vehicle, and observed a camera beside the vehicle's

console. A second officer arrived and remained with appellant while the first officer returned to the swimming pool and identified and spoke with the pool manager, who had made the call to police dispatch.

The first officer returned to appellant and requested and received verbal consent from appellant to look through the photographs stored on appellant's digital camera. Those photographs depicted the pool area, its surroundings, and people, primarily females in bathing suits, many of whom were young girls. The camera also contained photographs of people in a place that the officer could not identify.[2] The two officers advised appellant that he was "detained" and that they would "like him to make a statement in reference to the photos." After receiving *Miranda*[3] warnings at the Cuero Police Department, appellant made a statement, which was written out for appellant by one of the officers. The face of the written statement contained the required statutory warnings. In the statement, appellant acknowledged taking photos of women and a girl in bathing suits, but asserted that the photos were taken "just to see if the pictures come out good." The statement also reveals that the other photographs were from a pool in Yorktown "and those photos were taken just to see how the pictures came out."

A grand jury returned two separate indictments against appellant. Appellant filed an identical motion to suppress in each case, asserting that the officer stopped appellant's vehicle without a warrant, reasonable suspicion, or other legal justification. After hearing testimony from the two officers, the trial court denied the suppression motion in each case. Appellant then plead *nolo*

---

[2] It was later determined that those photographs had been taken at a Yorktown, Texas, country-club swimming pool.

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

*contendere* to the charges in both indictments.

## II. Court of Appeals Opinion

On direct appeal, appellant's sole issue asked, "Does merely taking photographs at a public pool give police reasonable suspicion to stop appellant's vehicle?" The court of appeals held that the officers had reasonable suspicion to stop and detain appellant; under the totality of the circumstances, the information known collectively to the police "provided specific, articulable facts that, combined with reasonable inferences to be derived from those facts, led to the reasonable conclusion that appellant was, had been, or soon would be engaged in criminal activity." *Arguellez v. State*, 2012 Tex. App. LEXIS 4373 at *11. The court described that collective information: the pool's manager called the police, identified herself, reported that appellant was taking pictures of people at the pool, and described the location, make, model, and color of appellant's vehicle; the first officer spotted the vehicle and reported that it was leaving the pool area; and the dispatcher, who remained in contact with the manager, confirmed that the first officer was behind the suspect vehicle. *Id.* at *10-11.

## III. Appellant's Ground for Review

We granted one of appellant's grounds for review, in which appellant asks whether there was reasonable suspicion to justify his stop and investigative detention.

The state responds by asserting that "[t]he trial court properly denied [appellant]'s motion to suppress evidence." It argues that the known facts created a reasonable suspicion such that the officer was justified in initiating a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1 (1968). It also asserts that an appellate court must apply a standard of abuse of discretion and may overturn the trial court's ruling only if that ruling is outside the zone of reasonable disagreement.

## IV. Arguments

Appellant argues that a "suspicious person" taking pictures of people at a public pool, without more, "does not create reasonable suspicion to believe that 'crime is afoot.'" He asserts that the applicable standards require objective, not subjective, facts and require more than one person's opinion that someone's behavior is suspicious. He also argues that taking pictures in a public park or a public pool is neither unusual nor a crime. "Taking pictures of people at a pool is no more 'unusual' than taking pictures of people at a beach or a football game, or any other public places where people gather." Appellant criticizes the state's failure to call "any 'true' complainant"–the pool manager or the dispatcher–and suggests that, because of such failure, it is unclear from the suppression hearing's testimony what information was imparted to the responding officers. He maintains that the information adduced at the suppression hearing failed to provide any facts that support reasonable suspicion to stop his vehicle and detain him, thus failing to meet the state's burden. He also suggests that the trial court erroneously reasoned that merely adding the word "suspicious" to a description of a "male subject taking pictures of people at the pool" provided the reasonable suspicion for the first officer to stop appellant's vehicle and detain appellant.

Appellant also disputes the conclusion of the court of appeals that, under the totality of circumstances, the facts known to the initial officer provided specific, articulable facts that, combined with reasonable inferences to be derived therefrom, led to the reasonable conclusion that he was, had been, or soon would be engaged in criminal activity. He notes that "the uncontested facts fail to show any 'unusual activity' or that the activity of taking photographs was related to crime." He asserts that, because the state failed to carry its burden to establish reasonable suspicion for the stop and subsequent detention, that stop and detention were unlawful, and the evidence

obtained from the stop should have been suppressed. Appellant argues that the applicable jurisprudence requires this Court to focus on what was objectively known to the first officer before stopping appellant's vehicle and detaining him and that, even when evaluating the facts under the totality of the circumstances, the state failed to carry its burden to establish reasonable suspicion for the stop and subsequent detention.

The state contends that the court of appeals correctly concluded that, under the totality of the circumstances, the known information provided specific, articulable facts, combined with reasonable inferences to be derived therefrom, sufficient to justify the initial stop and detention of appellant. The state acknowledges that, at the time of the stop, the first officer did not know who the informant was, but knew that she was still on the phone with the dispatcher. It asserts that, because the informant was still on the phone with the dispatcher when that officer arrived at the pool, her identity was easily ascertainable and was thus not anonymous. It argues that "the citizen-informant was not 'anonymous' as her identity was known by the dispatcher and imputed to [the first officer]." The state bases its discussion, in part, on evidence that was presented only at the punishment hearing, long after the hearing on appellant's motions to suppress. We note, as did the court of appeals, that in reviewing a ruling on a suppression motion, the appellate court considers only the evidence adduced at the suppression hearing. Because the trial court's ruling was based on only that evidence, the court of appeals does not consider additional evidence that was introduced in a later proceeding. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007); *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996); *Arguellez v. State*, 2012 Tex. App. LEXIS 4373 at *3, n.2.

The state points to appellant's attempted "flight," i.e., driving away from the pool area when the first officer arrived: "If [appellant]'s actions were not illegal or suspicious, why did he leave

when the police arrived?" The state also points out that the photos taken in one of these cases had been taken at a country club where appellant would have had to enter private property and that those photos "would not have been discovered if not for this investigative stop." It adds that appellant leaving in a car created an "exigent circumstance" and suggests that, had the initial officer not stopped appellant's car, "based upon the collective knowledge of the police," appellant "would have fled the scene and this crime would have gone undetected." The state also points to the brevity of the detention. It insists that, because the informant identified herself, identified the crime of taking photos at the pool, and stayed on the line with the dispatcher throughout the entire police encounter with appellant, the stop was justified.[4]

## V. Analysis

A trial court's ruling on a suppression motion is reviewed on appeal for abuse of discretion, with almost complete deference being given to its determination of historical facts, especially if those are based on an assessment of credibility and demeanor. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). "The same deference is afforded the trial court with respect to its rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor." *Id*. "[F]or mixed questions of law and fact that do not fall within that category, a reviewing court may conduct a *de novo* review." *Id*. When the trial court does not make express findings of fact, an appellate court

---

[4] The state also invites us "to peruse the photos introduced at trial." It asserts that "[t]he bulk of the photos are shot from the knees to the neck of young girls, focusing on breasts, nether regions[,] and rear-ends" and insists that "[t]hey are lewd." Nevertheless, we are unable to make our decision of the propriety of the stop based upon the evidence obtained from the stop. Appellant plead *nolo contendere* to the charges in both indictments and challenged only the pretrial ruling on his suppression motions, thus the propriety of the search and seizure, rather than the substance of the evidence seized, is the subject of our review of the court of appeals's decision in appellant's direct appeal.

must view the evidence in the light most favorable to the trial court's rulings, assuming that it made implicit fact-findings that are supported by the record, and will sustain the trial court's decision if it concludes that the decision is correct on any applicable theory of law.[5] *Id*. While the trial judge is the exclusive fact-finder at a suppression hearing, "[w]e review *de novo* whether the totality of circumstances is sufficient to support an officer's reasonable suspicion of criminal activity." *Crain v. State*, 315 S.W.3d at 48-49.

When police conduct a warrantless search or seizure, the state has the burden to show that the officer had reasonable suspicion to believe that an individual was violating the law. We have held that the officer must have specific, articulable facts that, when combined with rational inferences therefrom, lead him to reasonably conclude that a particular person actually is, has been, or soon will be, engaged in criminal activity. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). This standard is objective, thus there need be only an objective basis for the stop; the subjective intent of the officer is irrelevant. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). "The reasonable suspicion determination is made by considering the totality of the circumstances." *Id*. We give almost total deference to the trial court's determination of the facts, and then "we review *de novo* whether those facts are sufficient to give rise to reasonable suspicion." *Id*.

---

[5] The trial court did not make formal written fact-findings, but rather, in orally announcing his denial of the motions stated that, because the officers were told by the dispatcher that a caller had stated that someone was acting suspiciously and could be found at the pool area in the described vehicle, the officer did not make an interpretation of whether or not there was suspicious activity but rather was told there was suspicious activity, which was sufficient for him to make a stop and investigate; i.e., somebody, the person who made the call, interpreted appellant's activity as being suspicious and reported that to police, who "have a right to stop suspicious actors to determine if, in fact, they have acted suspiciously." The court concluded that based on the information, the officer "had a right to detain [appellant] and see what he had."

Even if that conclusion is taken as accurate, the responding officers still had insufficient evidence that appellant had violated a criminal statute.

The ultimate question is whether the officer was in possession of specific, articulable facts that were sufficient to provide a basis for a finding of reasonable suspicion to stop appellant's vehicle.

We have noted that actions in a series may each seem innocent enough in isolation. If, however, when examined in the context of the totality of the circumstances, they reasonably suggest recent or imminent criminal conduct, an investigative detention is justified. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). "The relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts." *Id.*, *quoting Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). The detaining officer need not personally be aware of every fact that objectively supports a reasonable suspicion to detain; the cumulative information known to the cooperating officers at the time of the stop is to be considered in making the reasonable-suspicion determination. *Id*. A 911 police dispatcher is ordinarily regarded as such a cooperating officer for purposes of making this determination. *Id.*, *citations omitted*. Still, "specific, articulable facts are required to provide a basis for finding reasonable suspicion. Mere opinions are ineffective substitutes for specific, articulable facts in a reasonable-suspicion analysis." *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005) (citing *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002)).

Appellant's vehicle was stopped based upon the information obtained from the police dispatcher. That information came from a person who informed the dispatcher that an unnamed man in a described motor vehicle was seen taking photographs of people at a public swimming pool. When the first officer arrived at the pool, he observed the described vehicle being driven away from the scene by a lone man. At the suppression hearing, the officer testified that the basis for the stop was the information received from dispatch. Neither the dispatcher nor the pool manager testified.

Nevertheless, we must consider the totality of the information known by the officers at the time, including that imparted to the officers by the dispatcher.

The totality of circumstances, including the cumulative information known to the cooperating officers at the time of the stop, was that an unknown male in a described vehicle was taking photographs at a public pool. Photographs are routinely taken of people in public places, including at public beaches, where bathing suits are also commonly worn, and at concerts, festivals, and sporting events. Taking photographs of people at such public venues is not unusual, suspicious, or criminal.

The generally matching description of the vehicle simply connects appellant to the "suspicious" photography, but does not in any way suggest that, by taking pictures in a public place, appellant was, had been, or soon would be, engaged in criminal activity. And since there was no indication of crime being afoot, leaving the scene of such photography does not constitute flight or evasion. Likewise, the fact that the pool manager remained in contact with the dispatcher and confirmed that the initial officer was behind the suspect vehicle does not in any way indicate that crime was afoot.

### VI. Conclusion

Given the record before us, we hold both that there was insufficient evidence to establish reasonable suspicion for the stop of appellant's vehicle and that the investigatory detention of appellant was not supported by reasonable suspicion. The court of appeals erred in affirming the trial court's denial of appellant's suppression motions and its judgments. We reverse the judgments of the court of appeals and remand these causes to the trial court for further proceedings consistent with this opinion.

Delivered:  September 18, 2013
Publish