

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00392-CR

RICHARD JACKSON                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

### FROM COUNTY CRIMINAL COURT NO. 2 OF DENTON COUNTY
### TRIAL COURT NO. CR-2012-02190-B

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Richard Jackson of possession of a usable quantity of marijuana in an amount of two ounces or less and assessed his punishment at confinement in jail for sixty days and a fine of $2,000. Appellant raises five issues. We hold the evidence was sufficient to support his conviction, so Appellant is not entitled to a reversal and rendition. However, we hold the trial

---

[1]See Tex. R. App. P. 47.4.

court erred in denying his motion to suppress, so we sustain Appellant's two issues attacking the denial of his motion to suppress, reverse the trial court's judgment, and remand the cause to the trial court for proceedings consistent with this opinion.

## Background

In an information, the State alleged that Appellant, on or about February 22, 2012, intentionally or knowingly possessed a usable quantity of marijuana in an amount of two ounces or less. *See* Tex. Health & Safety Code Ann. § 481.121(a) (West 2010). The offense is a Class B misdemeanor. *Id.* § 481.121(b)(1). Class B misdemeanors are punishable by a fine not to exceed $2,000 and confinement in jail for a term not to exceed 180 days or both. Tex. Penal Code Ann. § 12.22 (West 2011). A jury found Appellant guilty of possession of marijuana of two ounces or less as alleged in the information. The jury assessed Appellant's punishment at confinement in the county jail for 60 days and a fine of $2,000.

## Statement of Facts from the Trial

Corporal Jessie Peterson, while patrolling around 9:40 p.m., saw a car parked by one of the back doors of the Dental Depot, which was closed at that time of night. Because it was the only car there and because it was about 10:00 p.m., Corporal Peterson decided to investigate. No one was in the car, so Corporal Peterson walked around the building. Nothing was amiss. When

Corporal Peterson came back around the building, he saw Appellant sitting in the car.

When Corporal Peterson started walking toward the car, Appellant exited the vehicle and approached Corporal Peterson. Appellant identified himself, and, when asked, produced his driver's license. Appellant explained his job was to clean the business. Appellant was polite and courteous. After running a check on Appellant's license plates, Corporal Peterson determined they matched the vehicle. Appellant said he had been using the vehicle about three months.

At this point, Corporal Peterson's backup officer showed up. Corporal Peterson said the moment the backup officer appeared and walked up to join him, Appellant appeared to want to stop the conversation and leave. Corporal Peterson said he explained to Appellant that the backup officer was there for his safety. Corporal Peterson said he and Appellant shook hands, and each went back to his vehicle.

Corporal Peterson said he forgot to get the name of Appellant's boss so he could include it in his notes, so he turned around and started walking towards Appellant's car again. Corporal Peterson said Appellant was in his car and the car was turned on. Appellant rolled down the window halfway, and Corporal Peterson said the moment he got close to the vehicle, he smelled burnt marijuana. Corporal Peterson asked Appellant to roll down the window the rest of the way.

3

Corporal Peterson asked about Appellant's boss, and Appellant responded the information was inside the building. Corporal Peterson said the conversation then turned towards the marijuana. Corporal Peterson said when he smelled the marijuana, he had reasonable suspicion to investigate and probable cause to detain Appellant and search the vehicle. Corporal Peterson had Appellant step out of the car while he searched it. When Corporal Peterson asked Appellant about the smell in the car, Appellant said his girlfriend had smoked marijuana in the car a few hours before. Corporal Peterson found unusable remnants of marijuana in the center console. Eventually Corporal Peterson searched the trunk, where he found boxes and cleaning supplies. In the bottom of the trunk, apparently under the carpet, was a plastic compartment, and after popping off the plastic, Corporal Peterson found a bag of marijuana. Appellant denied the marijuana was his. Corporal Peterson finished his search and arrested Appellant.

## Sufficiency of the Evidence

In his fifth issue, Appellant contends the evidence was insufficient to support his conviction. Appellant contends the evidence is insufficient to show he had personal knowledge of the marijuana because he shared the vehicle with his girlfriend. Appellant emphasizes that he told Corporal Peterson that his girlfriend had smoked marijuana in the vehicle earlier that day. Appellant also emphasizes that he told Corporal Peterson that other than the unusable quantity in the center console, he was not aware of any other marijuana in the vehicle.

4

Appellant further stresses that Corporal Peterson found the bag containing 0.7 ounces of marijuana in the trunk hidden underneath Appellant's cleaning supplies below the carpet where it was not in plain view. Appellant does not contest that the substance found was marijuana. Appellant asks for a reversal of the trial court's judgment and for a judgment of acquittal pursuant to rule 43.2(c) of the Texas Rules of Appellate Procedure.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the

5

light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360. We must consider all the evidence admitted at trial, even improperly admitted evidence, when performing a sufficiency review. *Winfrey*, 393 S.W.3d at 767; *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004). We must do so even in a case that we reverse and remand because of error in the admission of evidence. *Moff*, 131 S.W.3d at 490.

Appellant acknowledged the car smelled like marijuana. Appellant also acknowledged to Corporal Peterson that he had been using the car for about three months. The jury could have concluded Appellant lied about the girlfriend and about not knowing marijuana was hidden in the trunk under his cleaning supplies. The jury decides what to believe. *See Winfrey*, 393 S.W.3d at 768. A rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See id.* We may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi*, 330 S.W.3d at 638. The cumulative force of the evidence when viewed in the light most favorable to the verdict supports the conviction. *See Sorrells*, 343 S.W.3d at 155. We overrule Appellant fifth issue.

6

## The Motion to Suppress

In Appellant's first issue, he contends the trial court erred by denying his motion to suppress. In his second, related issue, Appellant argues the trial court erred when it determined the second interaction with Corporal Peterson was consensual and not an investigative detention. Appellant requests a reversal and remand for further proceedings not inconsistent with this court's ruling pursuant to rule 43.2(d) of the Texas Rules of Appellate Procedure. We agree with Appellant on both issues.

## Statement of Facts from the Hearing on the Motion to Suppress

At the hearing on the motion to suppress, Corporal Peterson testified that he worked for the Highland Village Police Department. He was alone on patrol February 22, 2012, when, around 9:40 p.m. he saw a car parked by itself in the Pediatric Dental parking lot. The business was closed for the day, so the single car caught his attention. Because it was nighttime and the businesses were closed, he said a car parked by itself with no other cars in the area was suspicious activity that he wanted to check on. Corporal Peterson parked his vehicle about two car lengths behind the suspicious car.

Corporal Peterson said he stopped, told dispatch he would be out on a suspicious vehicle, and then exited his vehicle. He walked around the business to see if the doors and windows were damaged and to ensure no criminal activity was occurring. Corporal Peterson was not aware of any burglaries at this specific business but was aware of burglaries in the business district generally.

7

His search revealed nothing, but as he walked back, he saw Appellant sitting in the parked vehicle.

Corporal Peterson said he was still twenty-five to thirty feet away from the car when he started approaching it, and, without Corporal Peterson asking, Appellant exited the vehicle and walked up to him. Corporal Peterson asked Appellant for an ID, and Appellant provided one. When asked what was going on, Appellant responded that he was the cleaner of the business. When asked at the hearing if Appellant was free to leave, Corporal Peterson responded, "Initially, when I first approached him, sure." Once Corporal Peterson had Appellant's ID, he checked Appellant and Appellant's license plate through the police system. Corporal Peterson described Appellant as polite and cooperative.

Corporal Peterson said Appellant had two tags on his vehicle. The buyer's tag did not show up on the Texas database system, and the other tag came back to a different vehicle, but Corporal Peterson said he had run the last character incorrectly. He said he and Appellant discussed why Appellant was there, the tags, and Appellant's suspended license for about eight minutes. During these eight minutes, Corporal Peterson smelled nothing unusual about Appellant. About halfway through their conversation, a second officer appeared due to the confusion over the license plate as a backup officer. After correcting the last character on the license plate, the plate matched the car, and after about sixty seconds Corporal Peterson and Appellant parted ways.

After Corporal Peterson got back to his car, he realized he did not get any information on Appellant's boss. Corporal Peterson said he needed that information to put into his computer notes to document that Appellant was a worker at the business. Corporal Peterson said he turned around and went back to Appellant to ask him who his boss was. Appellant was already back inside his vehicle. Appellant rolled down his window about halfway to speak to Corporal Peterson. Corporal Peterson said he could smell the odor of marijuana coming from inside the vehicle right away. After finishing his questions regarding the identify of Appellant's boss, Corporal Peterson said he asked Appellant if there was anything inside the vehicle Corporal Peterson needed to know about, and Appellant responded that there was not. When Corporal Peterson asked Appellant about the smell, Appellant responded that his girlfriend smoked marijuana earlier in the car and that was where the odor came from.

Corporal Peterson said at that point he had probable cause to search the car and Appellant, so he got Appellant out of the car and had Appellant stand by the cover officer. Corporal Peterson said Appellant remained courteous and compliant. Corporal Peterson said he asked Appellant if he knew where the marijuana was, and Appellant responded that he thought his girlfriend kept it in the center console of the car. Corporal Peterson checked and found only remnants of marijuana there.

Corporal Peterson checked the trunk and found a bag of marijuana under the carpeted area of the trunk. Corporal Peterson said that ended the search,

9

and he arrested Appellant. Corporal Peterson said Appellant was not free to leave the moment he came across the odor of marijuana. Corporal Peterson said the situation fluctuated because earlier, when there was confusion over the plates and concern about whether the car was stolen, he could not let Appellant just walk away.

Corporal Peterson said either he or the backup officer called Appellant's boss to come to the scene, and Appellant's boss appeared after Corporal Peterson left. Corporal Peterson failed to put Appellant's boss's name in his report. Corporal Peterson said he wanted the information for his CAD notes, which he described as notes to update a generic call but which did not automatically go into his report. Typically he did not even look at his CAD notes when filling out a report. Corporal Peterson did not know if he put Appellant's boss's name in the CAD notes and thought he probably did not because the boss's name had nothing to do with the offense. He said the boss's name was not important any longer.

During the eight minutes Corporal Peterson spoke to Appellant, he did not notice Appellant's eyes being bloodshot and did not notice any kind of odor of alcohol or burnt marijuana. Corporal Peterson said Appellant's license was suspended, but he did not remember if Appellant turned his car on after getting into it. Corporal Peterson said he had discussed with Appellant how Appellant could get pulled over due to his tags and how he would end up getting a ticket for a suspended license. Corporal Peterson said he had no intention of entrapping

Appellant by letting him drive off only so he could arrest him. Corporal Peterson acknowledged not instructing Appellant to call someone to come pick him up.

When asked to again describe the second interaction, Corporal Peterson said he had nearly gotten to the front of his car when he turned around. This time Appellant did not get out of his car. Corporal Peterson's intention was to speak to Appellant. He assumed Appellant would have probably thought he wanted to speak to Appellant. Corporal Peterson said he did not ask Appellant to roll down his window. After Appellant rolled down the window and Corporal Peterson smelled the marijuana, Corporal Peterson asked Appellant to get out of the car. Corporal Peterson said that when he smelled the marijuana Appellant was not free to leave. Corporal Peterson did not ask for permission to search Appellant's car because he did not need permission.

Regarding the first interaction, Corporal Peterson said when he first saw Appellant in his car, Appellant could have just driven away. Corporal Peterson denied situating his car so that Appellant was blocked in. He said Appellant got out of his vehicle and denied telling Appellant to exit.

The trial court denied the motion to suppress. Before denying the motion, the trial judge summarized the State's position as a consensual encounter, an investigative detention, and a subsequent consensual encounter that resulted in probable cause for a search based upon the odor.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.

11

Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

Appellant acknowledges that a trial court's ruling on a suppression motion is reviewed for an abuse of discretion on appeal with almost complete deference being given to its determination of the historical facts, especially where those determinations are based on an assessment of credibility and demeanor. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). Appellant states, however, he is not contesting the facts.

There are three categories of interactions between police officers and citizens: (1) encounters, (2) investigative detentions, and (3) arrests. *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010). When determining which category an interaction falls into, courts examine the totality of the circumstances. *Id.*

An encounter is a consensual interaction that a citizen is free to terminate at any time. *Id.* A consensual encounter does not implicate constitutional protections. *State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011); *Crain*, 315 S.W.3d at 49. An encounter occurs when an officer approaches a

12

citizen in a public place to ask questions, and the citizen is willing to listen and voluntarily answers. *Crain*, 315 S.W.3d at 49.

In contrast, an investigative detention occurs when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave. *Id.* Detentions are seizures under the Fourth Amendment. *Woodard*, 341 S.W.3d at 411. When the court is determining whether the interaction constituted an encounter or a detention, the court focuses on whether the officer conveyed a message that compliance with the officer's request was required. *Crain*, 315 S.W.3d at 49. The question is whether a reasonable person in the citizen's position would have felt free to decline the officer's requests or otherwise end the encounter. *Id.* When determining what factors may contribute to a reasonable person's perceptions during an interaction with an officer, courts look at whether there was the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Id.* at 49–50. The court looks at the officer's conduct as well as the setting in which the interaction takes place. *Id.* at 51.

Appellate court's review *de novo* whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion of criminal activity. *Arguellez*, 409 S.W.3d at 663 (quoting *Crain*, 315 S.W.3d at 48–49). Specific, articulable facts are required to provide a basis for finding reasonable suspicion; the officer's subjective intent is irrelevant. *Id.* At the time Corporal Peterson

13

approached Appellant's car a second time, he acknowledged his only purpose was to initiate a consensual encounter to learn the identity of Appellant's boss. He effectively acknowledged there was no reasonable suspicion for an investigative stop. The question is whether he nevertheless initiated an investigative stop.

There is no question that from Corporal Peterson's perspective, the last interaction with Appellant at the car window was a consensual encounter. Corporal Peterson's perspective, however, was not the dispositive one. *Cf. Crain*, 315 S.W.3d at 46–52 (holding that interaction was a detention despite arresting officer's perception that interaction was a consensual encounter). The dispositive perspective is that of a reasonable person in Appellant's position. *Id.* at 49.

Whether a given set of historical facts amounts to a consensual police-citizen encounter or a detention is an issue of law. *Johnson v.* State, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). Whether the facts surrounding the interaction constitute a consensual police-citizen encounter or a detention is subject to a *de novo* review. *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011). Determining the nature of the encounter is subject to *de novo* review because the application of legal principles to a specific set of facts is an issue of law. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). Courts are to step into the shoes of the defendant and make this determination from a common, objective perspective. *Castleberry*, 332 S.W.3d at 467.

14

Corporal Peterson acknowledged the situation fluctuated regarding whether Appellant was or was not free to break off the engagement and leave. The encounter started at 9:40 p.m. on February 22, 2012. It was nighttime. A second officer arrived at the scene while Corporal Peterson was talking to Appellant. The confusion over the tags was caused by Corporal Peterson's running the wrong last character. This type of error, regardless of whether Corporal Peterson made it innocently, would have concerned a reasonable person in a parking lot at night alone with two police officers. Appellant's driver's license was suspended. Corporal Peterson knew he was not going to arrest Appellant for driving with a suspended license. A reasonable person in Appellant's place, however, would not have known what Corporal Peterson was thinking. When Corporal Peterson returned to Appellant's car after releasing Appellant, a reasonable person might have concluded it was to stop him from driving away. Under the totality of the circumstances, simply by approaching Appellant's car after detaining and then releasing Appellant moments earlier, Corporal Peterson was implicitly communicating to Appellant that he was not free to leave. *See Crain*, 315 S.W.3d at 51–52 (discussing implicit command). In short, a reasonable person would not have felt free to keep the window rolled up, put his car in gear, and drive away while Corporal Peterson was approaching the car. *See id.* at 49 ("An encounter is a consensual interaction which the citizen is free to terminate at any time."). By this point, a reasonable person would not have concluded Corporal Peterson wanted to engage in casual conversation. A

15

reasonable person would have yielded to Corporal Peterson's show of authority under the reasonable belief that Corporal Peterson was not yet finished with Appellant. *See id.* ("[A]n investigative detention occurs when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave."); *Ebarb v. State*, 598 S.W.2d 842, 850 (Tex. Crim. App. 1979) (op. on reh'g) (holding an investigative detention occurs when a police officer orders a person who is sitting in a parked car to roll down his window or to open his door). We hold Corporal Peterson, after releasing Appellant back to his car, detained Appellant again without reasonable suspicion and, therefore, the trial court abused its discretion by denying Appellant's motion to suppress. We sustain Appellant's first and second issues.

## Conclusion

Having sustained Appellant's first and second issues and having overruled Appellant's fifth issue, we reverse the trial court's judgment and remand the cause to the trial court for proceedings consistent with this opinion. Because of our disposition of Appellant's first and second issues, we need not address Appellant's third and fourth issues.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  GARDNER, WALKER, and MCCOY, JJ

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

16

DELIVERED:  December 31, 2014