Opinion filed July 16, 2015



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00064-CR

_____

**THE STATE OF TEXAS, Appellant**

**V.**

**LISA ANN PETERSEN, Appellee**

**On Appeal from the County Court at Law**
**Midland County, Texas**
**Trial Court Cause No. 142727**

## O P I N I O N

This is a shoplifting case. Appellee, Lisa Ann Petersen, was charged with the offense of theft of property valued at an amount greater than or equal to fifty dollars but less than five hundred dollars, a Class B misdemeanor. *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(2)(A)(i) (West Supp. 2014). She filed a motion to suppress evidence of her statements to "Midland Police Department and/or any persons acting as agents of the Midland Police Department." She alleged that her statements in

response to questioning by police officers and a store security guard should be suppressed because they were given without *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). After conducting a pretrial hearing on the motion to suppress, the trial court granted the motion by written order. The State of Texas brings this interlocutory appeal of the trial court's order granting the motion to suppress. We reverse and remand.

*Background Facts*

Appellee was shopping in a Wal-Mart in Midland. The store's loss-prevention officer, Moses Cortez, noticed that Appellee placed several items in shopping bags and then placed the bags in her shopping cart. Cortez watched Appellee pay for one item and then walk through the registers without paying for the rest of her items. Cortez stopped Appellee right before the exit, identified himself as a security guard, and showed her his "Wal-Mart badge." Cortez said that he told Appellee that the police were on their way. Appellee stayed at the scene at Cortez's instruction. Cortez began asking Appellee questions. Cortez testified that Appellee "admitted to theft," but he could not recall her exact words. Cortez did not make a recording of Appellee's oral statement, and he did not give her any *Miranda* warnings.

The pretrial hearing on the motion to suppress focused on Appellee's statements to Cortez. In orally granting the motion to suppress, the trial court ruled that "any statements made by the Defendant at this time prior to the arrest were custodial in nature. And I believe that they are inadmissible." The trial court subsequently entered a written order suppressing the statements made by Appellee. The State then filed an interlocutory appeal of the trial court's written order granting the motion to suppress.

*Analysis*

In its sole issue, the State argues that the trial court erred when it granted Appellee's motion to suppress. We note at the outset that the State has limited rights of appeal in criminal cases. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01 (West Supp. 2014). The State is entitled to appeal an order of a court in a criminal case that grants a motion to suppress evidence if jeopardy has not attached and if the elected prosecutor certifies to the trial court that the appeal is not taken for the purpose of delay and that the suppressed evidence is of substantial importance to the case. *Id.* art. 44.01(a)(5). The elected district attorney for Midland County personally signed the notice of appeal filed in this case certifying the matters required to invoke this court's jurisdiction to review the trial court's interlocutory order granting the motion to suppress. *See State v. Redus*, 445 S.W.3d 151, 154–55 (Tex. Crim. App. 2014).

A trial court's ruling on a suppression motion is reviewed on appeal for an abuse of discretion, with almost complete deference given to its determination of historical facts, especially if those are based on an assessment of credibility and demeanor. *See Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013) (citing *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010)). The same deference is afforded the trial court with respect to its rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility. *Id.* For mixed questions of law and fact that do not fall within that category, a reviewing court may conduct a de novo review. *Id.* We review de novo a trial court's application of the law to the facts. *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). Regardless of whether the trial court granted or denied the motion, appellate courts view the evidence in the light most favorable to the ruling. *Wade*, 422 S.W.3d at 666; *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011). If the trial court makes express findings

of fact, as the court did in this case, we review the evidence in the light most favorable to the trial court's ruling and determine whether the evidence supports these factual findings. *Valtierra*, 310 S.W.3d at 447.

The State challenges the trial court's implicit determination that Cortez was an agent of law enforcement when Appellee made statements to him purportedly admitting the theft. In *Wilkerson v. State*, the Texas Court of Criminal Appeals addressed the question of whether an agency relationship existed between law enforcement and non-law enforcement agents in order to determine if *Miranda* warnings were required. *Wilkerson v. State*, 173 S.W.3d 521 (Tex. Crim. App. 2005). To determine if an agency relationship exists, appellate courts must examine the entire record and consider three factors: (1) the relationship between the police and the potential police agent, (2) the interviewer's actions and perceptions, and (3) the defendant's perceptions of the encounter. *Id.* at 530–31. This test helps courts determine whether the interviewer was acting as an instrumentality or was "in cahoots" with the police or prosecution. *Elizondo v. State*, 382 S.W.3d 389, 394 (Tex. Crim. App. 2012) (citing *Wilkerson*, 173 S.W.3d at 531).

*Wilkerson* involved a CPS investigator that interviewed a father who was in police custody for injury to a child. *Wilkerson*, 173 S.W.3d at 523. The CPS worker needed to discuss the placement of the father's children in foster care and did not give *Miranda* warnings prior to speaking with the father. *Id.* During the interview, the father acknowledged spanking his son, and this information was included in the CPS report that was forwarded to the police. *Id.* The court held that non-law enforcement state agents are required to give *Miranda* warnings only when acting in tandem with the police to gather evidence for a criminal prosecution. *Id.* Accordingly, the facts in *Wilkerson* are very different from the facts in this appeal.

In *Elizondo*, the Court of Criminal Appeals applied the test that it had adopted in *Wilkerson* and addressed the question of whether a retail store's loss-prevention

officer was required to give *Miranda* warnings. *Elizondo*, 382 S.W.3d at 394–95. The court began its analysis by noting that the law does not presume an agency relationship and that the party alleging such a relationship has the burden of proving that it exists. *Id.* at 395 (citing *Wilkerson*, 173 S.W.3d at 529). The court then applied the three *Wilkerson* factors to the facts of the case. *Id.*

*Elizondo* involved a loss-prevention officer employed by Old Navy. *Id.* at 391. After observing the defendant leave the store without paying for items, the loss-prevention officer intercepted her outside the store and asked her to return to the store with him. *Id.* The loss-prevention officer and a manager of the store took the defendant to a manager's office and retrieved the stolen items from her purse. *Id.* at 391–92. The loss-prevention officer then presented the defendant with a document entitled "GAP INC. CIVIL DEMAND NOTICE." *Id.* at 391. The document contained an admission of theft, wherein the defendant "admitted to the theft of" items from the store, admitted the value of the stolen items, and declared that her detention was reasonable. *Id.* The defendant signed the document and a store receipt reflecting the value of the items taken. *Id.* The loss-prevention officer testified that these events were the "typical protocol" for theft at Old Navy. *Id.* He then called the Lubbock Police Department, after which officers arrived and arrested the defendant for theft. *Id.* The district attorney's office subsequently obtained a copy of Old Navy's records pertaining to the theft, including the civil demand notice signed by the defendant. *Id.* The defendant moved to suppress the civil demand notice on the ground that the loss-prevention officer did not give *Miranda* warnings to her prior to obtaining the statement. *Id.*

The loss-prevention officer in *Elizondo* testified that he had worked for Old Navy for three years and that he had never worked in law enforcement. *Id.* He obtained written confessions in "99%" of his encounters with accused shoplifters, and those confessions were kept for the store's records. *Id.* However, the store

5

would give a copy to the police or a prosecutor upon request. *Id.* He also testified that the store's primary purpose for obtaining written confessions from accused shoplifters was for "punitive or monetary damages" associated with the shoplifting. *Id.* at 391–92.

With respect to the first *Wilkerson* factor of examining the relationship between the police and the potential police agent, the court in *Elizondo* determined that there was no indication of a calculated practice between the police and the store's loss-prevention staff even though the police may have been aware of the store's practice of obtaining signed statements from accused shoplifters. *Id.* at 395. In reaching this determination, the court noted that the police had not been contacted when the loss-prevention officer obtained the statement, "*so they clearly did not instruct* [*the loss-prevention officer*] *to get specific information or give him questions to ask* [*the defendant*]." *Id.* (emphasis added). The second *Wilkerson* factor focuses on the interviewer's actions and perceptions. *Id.* The court in *Elizondo* determined that the purpose of the loss-prevention officer's interview was to adhere to the store's policies rather than acting as a police agent. *Id.* The third *Wilkerson* factor focuses on the defendant's perception of the encounter. The court in *Elizondo* noted that, if there is nothing in the record regarding the defendant's perception, the court is required to consider whether a reasonable person in the defendant's position would believe that the loss-prevention officer was a law enforcement agent. *Id.* at 396. The court concluded that a reasonable person in the defendant's position would not have believed that the loss-prevention officer was a law enforcement agent because he was not wearing a uniform and he identified himself as a loss-prevention officer for Old Navy. *Id.* "There was nothing in the record indicating that [the loss-prevention officer] appeared to [the defendant] to be cloaked with the actual or apparent authority of the police." *Id.*

As was the case in *Elizondo*, the resolution of this appeal is governed by an application of the *Wilkerson* factors to the facts in this case to determine if an agency relationship existed between Cortez and the police. The trial court did not make an explicit finding of an agency relationship. However, the trial court entered the following written findings of fact that are relevant to our analysis:

Findings of Fact

. . . .

5. The state announced its intention to utilize admission of [Appellee's] statements prior to her arrest by security personnel for Walmart, Moses Cortez under the shop keeper privilege and that her statements were voluntary and spontaneous and not the result of custodial interrogation.

6. Walmart security officer Cortez watched [Appellee] place items into shopping bags and proceed[] through the cashier's line without paying for some of the items she had placed in her shopping cart.

7. Prior to stopping [Appellee] before she left the store premises, security officer Cortez had already made the determination to prosecute [Appellee] as a shop lifter [sic].

8. Security officer Cortez stopped [Appellee] before the exits of the Walmart store building.

9. Security officer Cortez admits [Appellee] never left the store before his apprehension of [Appellee].

10. Security officer Cortez identified himself and showed [Appellee] his Walmart badge.

11. Security officer Cortez admits that he already called the police as a result of his prior decision to prosecute [Appellee] for theft before her stop and apprehension.

12. Security officer Cortez informed [Appellee] that the police were on their way after [Appellee's] initial stop and detention.

13. Security officer Cortez admits that [Appellee] stayed at the store pursuant to his instructions.

14. Security officer Cortez indicates [Appellee] "admitted to theft"; and further indicates he does not recall statements [Appellee] told him after apprehension that made security officer Cortez conclude [Appellee] admitted to theft.

We note that the most significant finding of fact would appear to be Finding of Fact No. 11, wherein the court found that Cortez called the police before stopping Appellee. While Cortez subsequently disagreed with this testimony when questioned by the prosecutor, his earlier testimony supported the trial court's finding that he contacted the police prior to his detention of Appellee. Accordingly, we are bound by this finding. *See Valtierra*, 310 S.W.3d at 447. The court in *Elizondo* relied on the fact that Old Navy's loss-prevention officer had not called the police when he questioned the defendant. Even though Finding of Fact No. 11 is distinguishable from the facts in *Elizondo*, we conclude that it is not controlling.

The first *Wilkerson* factor examines the relationship between the police and the potential police agent. There was no finding of a "calculated practice" between the Midland police and Cortez or any evidence in that regard. *Elizondo*, 382 S.W.3d at 395. While the trial court found that Cortez contacted the police before detaining Appellee, there was no evidence that the police instructed him to obtain a statement from Appellee, which was significant to the court's analysis in *Elizondo*—citing the fact that the Old Navy loss-prevention officer had not contacted the police before obtaining the statement from the defendant. Accordingly, we conclude that the first factor weighs against a finding of an agency relationship.

The second part of the *Wilkerson* test focuses on the interviewer's actions and perceptions to evaluate the purpose of the interview. *Wilkerson*, 173 S.W.3d at 530. The trial court found that, "[p]rior to stopping defendant before she left the store premises, security officer Cortez had already made the determination to prosecute defendant as a shop lifter [sic]." The record supports this finding. Cortez was asked, "[W]hy were you stopping her? What was your intention?" Cortez responded,

8

"Prosecution." Unlike the situation in *Elizondo*, there was no evidence that Cortez questioned Appellee in accordance with store policy. Thus, his purpose in interviewing Appellee was to prosecute her for theft. Accordingly, this factor weighs in favor of an agency finding.

The third *Wilkerson* factor focuses on the defendant's perception of the encounter. As was the case in *Elizondo*, there is nothing in the record regarding Appellee's perception. Accordingly, we are required to consider whether a reasonable person in Appellee's position would have believed that Cortez was a law enforcement agent. We conclude that a reasonable person would not have believed that Cortez was a law enforcement agent. The trial court found that Cortez "identified himself and showed [Appellee] his Walmart badge." In reliance upon similar findings, the Court of Criminal Appeals in *Elizondo* determined that there was nothing in the record indicating that the loss-prevention officer appeared to the defendant to be cloaked with the actual or apparent authority of the police. *Elizondo*, 382 S.W.3d at 396. Thus, this factor also weighs against a finding of agency.

After giving deference to the trial court's written findings of fact, we have determined that two of the three *Wilkerson* factors weigh against a finding that Cortez was an agent of law enforcement. We further conclude that the trial court abused its discretion in granting Appellee's motion to suppress all statements that Appellee made to either Cortez or the police.[1] Our conclusion is based in large part on the fact that Appellee had the burden of establishing an agency relationship between Cortez and the police. However, only one of the *Wilkerson* factors weighs

---

[1]The trial court also suppressed any statements that Appellee may have made to the police. However, the trial court did not receive any testimony about her statements to police officers. In this regard, it appears that the trial court made the determination that any statement occurring after Cortez's encounter with Appellee should be suppressed.

in her favor. Additionally, we disagree with the trial court's conclusion that Appellee was in custody when Cortez questioned her.

*Miranda* warnings are only required when police conduct a custodial interrogation of a suspect. *Id.* at 394. A person is in "custody" if, under the circumstances, "a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California*, 511 U.S. 318, 322–25 (1994)). The reasonable person standard presupposes the person is innocent. *Dowthitt*, 931 S.W.2d at 254. Cortez's questioning of Appellee occurred near the exit doors of the Wal-Mart. Cortez had not asked to move to another location within the store and had not physically restrained Appellee's movement. Accordingly, we disagree with the trial court's conclusion that Appellee was in custody when Cortez encountered her.

Appellee raises the contention that the trial court's act of granting the motion to suppress constituted harmless error. She bases this contention on the allegation that the State "cannot prevail on its prosecution due to insufficient evidence that a crime was committed by [Appellee]." It appears that Appellee is asserting that she could not have been prosecuted for shoplifting because she had not completely exited the store. She additionally argues that Cortez could not recall her exact statements.

We are precluded from engaging in the inquiry that Appellee requests us to make. The elected district attorney certified in the notice of appeal that the excluded evidence "is of substantial importance in this case." The defendant is not permitted to challenge the verity of the prosecutor's certification of "substantial importance." *Redus*, 445 S.W.3d at 156 n.16 ("[O]nce the government certifies that the evidence is a substantial proof of a material fact, a reviewing court may not review 'the substantiality or the materiality' of the evidence." (quoting *State v. Chupik*, 343

10

S.W.3d 144, 146 (Tex. Crim. App. 2011)) (internal quotation marks omitted)). Furthermore, in the pretrial setting, there is neither constitutional nor statutory authority for a defendant to test, or for a trial court to determine, the sufficiency of the evidence to support or defeat an element alleged in the charging instrument. *Woods v. State*, 153 S.W.3d 413, 415 (Tex. Crim. App. 2005). We sustain the State's sole issue.

*This Court's Ruling*

We reverse the order of the trial court granting Appellee's motion to suppress evidence, and we remand this cause to the trial court for further proceedings consistent with this opinion.

JOHN M. BAILEY

JUSTICE

July 16, 2015

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.