# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
### NO. 03-16-00532-CR
---

**The State of Texas, Appellant**

**v.**

**Sarah Christine Padon, Appellee**

---
**FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
NOS. CR2013-268, CR2013-269 & CR2013-270
HONORABLE JACK H. ROBISON, JUDGE PRESIDING**
---

## M E M O R A N D U M   O P I N I O N

The State of Texas appeals the district court's order granting Sarah Christine Padon's

motion to suppress evidence in the underlying felony prosecution for intoxication manslaughter and

two aggravated assaults with a deadly weapon. *See* Tex. Penal Code §§ 22.02(a)(2), 49.08. The

evidence resulted from a warrantless blood draw taken after Padon's involvement in a fatal vehicle

collision. On appeal, the State contends that the district court abused its discretion by granting

Padon's motion.[1] We will affirm the district court's order.

---

[1] Initially, the trial court denied Padon's motion to supress evidence in an order dated
December 16, 2013. Padon filed a motion for reconsideration of that ruling after the Court of
Criminal Appeals issued its opinion in *State v. Villarreal*, 475 S.W.3d 784, 815 (Tex. Crim. App.
2014) (holding that "a nonconsensual search of a DWI suspect's blood conducted pursuant to the
mandatory-blood-draw and implied-consent provisions in the Transportation Code, when undertaken
in the absence of a warrant or any applicable exception to the warrant requirement, violates the
Fourth Amendment").

## BACKGROUND

The only witnesses at the hearing on Padon's motion to suppress were two Texas Department of Public Safety Troopers, Lawrence Escamilla and Rodney Zarate, who testified about their roles in Padon's DWI investigation.[2] During the hearing Trooper Escamilla testified, among other things, that he was "doing all the investigation by [him]self" and that he did not have probable cause to believe that Padon committed the offense of intoxication manslaughter until "[a]bout 3½ to 4 hours after [his] arrival" at the scene.

The trial court subsequently issued findings of fact and conclusions of law in narrative form, addressing the evidence presented:

> At 9:34 p.m. on June 17, 2012 Trooper Larry Escamilla was dispatched to an accident that had occurred at approximately 9:24 p.m. at the 4000 block of FM 2673 in Comal County. He was the first person to make the scene when he arrived at approximately 9:37 p.m.
>
> Escamilla heard screaming coming from a blue SUV. The blue SUV was later determined to be occupied by the Defendant, Sarah Padon. The Defendant told the [T]rooper she was coming from the Dam Red Barn, known by the Trooper to be a nearby bar, and he could smell alcohol coming from within the vehicle. The [T]rooper also noticed open containers of beer within the vehicle.
>
> When asked how the accident occurred the Defendant responded, "It was black and then all the sudden boom."[3] At this time Trooper Escamilla had to step away so that EMS could attend to her injuries. He then approached the white passenger vehicle and immediately recognized the driver was dead on impact. He observed a young boy pinned in the back seat and his mother, the front seat passenger, complaining of leg pain.

---

[2] The court held its initial hearing on the motion to suppress November 25, 2013 and the subsequent hearing was June 21, 2016. Only Trooper Escamilla testified at the subsequent hearing.

[3] Trooper Escamilla testified that he heard Padon say, "It was just black and all I heard was a big boom," and "[a]ll of a sudden there was a big boom."

When paramedics were removing Sarah Padon from the blue SUV Escamilla noted that the rear brake lights turned off and no [other] lights [were illuminated] indicating that lights of the Padon vehicle may have been off.[4]

The defendant and both passengers of the white car were flown to University Hospital in San Antonio by Airlife. At 9:59 [p.m.] Trooper Escamilla requested that San Antonio communications to send a local trooper to collect a blood sample from the Defendant pursuant to Texas Transportation Code Sec. 724.012(b)(l). The report requested by Escamilla indicated that there was suspected intoxication and that an intoxication manslaughter was the basis for the request of a mandatory blood draw.

At no time did Trooper Escamilla seek a warrant, nor did he inquire as to the availability of a judge to issue one.

Texas Transportation Code Sec. 724.012(b)(l) has been held to be unconstitutional under most circumstances by the Court of Criminal Appeals and absent exigent circumstances.

The State attempted to support a finding of exigency in the present case by indicating that surveying the accident scene was necessary prior to Trooper Escamilla making a finding of probable cause that would be necessary to support any request for search warrant. The State argues that this temporal delay made the seeking of a search warrant impracticable under the circumstances.

This Court disagrees. It is reasonable to conclude that a search warrant containing the facts that Trooper Escamilla had within minutes of viewing the scene (Defendant coming from a bar, smell of alcohol, loose beer cans in plain view, and lights being off of Defendant's vehicle) would have been sufficient basis for seeking a search warrant.

Attempts by [t]he State to push back the period of time necessary to develop probable cause are ad hoc, backward looking justifications to support a finding of exigency that did not exist at the time of the incident based on the facts that were present. The Trooper (Escamilla) obviously decided to rely on the statute authorizing a warrantless blood seizure.

---

[4] Trooper Escamilla testified that the brake lights were illuminated because, according to EMS, Padon's foot was caught "in that area." He stated that when she was removed from her vehicle, the lights were off.

3

These findings and conclusions do not address the testimony of the "local trooper" referenced above, Trooper Zarate. Briefly summarized, Trooper Zarate testified that he was dispatched to University Hospital to obtain a blood draw from a subject, identified in court as Padon, for a vehicle crash resulting in a fatality. Trooper Zarate read Padon the DIC-24 statutory warning, but he did not ask her whether she would consent to providing a sample of her blood because the blood draw was "mandatory." He stated that he was unaware whether there was a magistrate judge on duty that night. A nurse drew Padon's blood at 11:25 p.m.

Ultimately, the court granted Padon's motion to suppress evidence obtained as a result of the warrantless blood draw. *See Weems v. State*, 493 S.W.3d 574, 580 (Tex. Crim. App. 2016) (noting that with some exceptions, "where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so" (quoting *Missouri v. McNeely*, 133 S. Ct. 1552, 1561 (2013))). The State then filed this appeal, contending that the trial court abused its discretion by granting Padon's motion to suppress and declining to find that exigent circumstances justified her warrantless blood draw. *See Cole v. State*, 490 S.W.3d 918, 923 (Tex. Crim. App. 2016) (concluding that whether law enforcement faced emergency that justified acting without warrant calls for case-by-case determination based on totality of circumstances). The State contends that the court should have found exigent circumstances "where the sole officer tasked with a two and a half hour major accident investigation involving one death and three injured individuals—including the defendant—could not stop his investigation to obtain a warrant that he knew would take an hour and a half to draft and another 30 to 90 minutes to be signed by a judge[.]"

We determined that the trial court's initial findings did not allow us to properly assess the suppression issue, and we remanded the cause to the trial court for the entry of essential findings that were omitted. *See State v. Padon,* No. 03-16-00532-CR, 2017 Tex. App. LEXIS 1099, at *2–3 (Tex. App.—Austin Feb. 9, 2017) (mem. op. & order, not designated for publication) (per curiam). The trial court then provided a supplemental record with its signed order adopting the proposed additional findings of fact and conclusions of law filed by Padon. The lengthy, additional findings included specific findings by the trial court that Trooper Escamilla was not credible:

> Escamilla's claim he was the only person available to work on the investigation is not credible or supported by the record.
>
> Escamilla stated he did not have probable cause to believe that Padon committed the offense of intoxication manslaughter until three and one half hours after his arrival on the scene when he discovered alcohol in Padon's SUV. The court finds Escamilla's assessment of a delay in the existence [of probable cause] is not credible because it is not supported by the record or the law.

Some related conclusions of law included the following:

> Within minutes of arriving on the scene, Escamilla had sufficient information to establish probable cause that Padon had committed the offenses of intoxication manslaughter and intoxication assault.
>
> The record establishes that the on-call duty Trooper Zarate could have secured a warrant for Padon's blood draw had he not simply acquiesced in Escamilla's request for a warrantless blood draw under § 724.012(b)(1)(A).

We consider these additional findings and conclusions in our review of the State's appellate issue.

## DISCUSSION

We review a trial court's ruling on a motion to suppress using an abuse-of-discretion standard, giving almost complete deference to its determination of historical facts, especially if those

are based on an assessment of a witness's credibility and demeanor, and reviewing de novo the court's application of the law to facts that do not turn on credibility and demeanor. *State v. Cortez*, 543 S.W.3d 198, 203–04 (Tex. Crim. App. 2018); *Arguellez v. State*, 409 S.W.3d 657, 662–63 (Tex. Crim. App. 2013). When as here, the trial court makes express findings of fact, we view the evidence in the light most favorable to its ruling and determine whether the evidence supports those factual findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *see State v. Robinson*, 334 S.W.3d 776, 778 (Tex. Crim. App. 2011). We then review the trial court's legal rulings de novo unless its findings are dispositive. *Robinson*, 334 S.W.3d at 778.

We may sustain the trial court's decision if we conclude that the decision is correct under any applicable theory of law. *Cortez*, 543 S.W.3d at 203. A trial court's ruling should be reversed only if it is arbitrary, unreasonable, or "outside the zone of reasonable disagreement." *Id*. at 203. At a suppression hearing, the trial court is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony. *Weems*, 493 S.W.3d at 577. Thus, the trial court may believe or disbelieve all or part of a witness's testimony provided at a suppression hearing. *Valtierra*, 310 S.W.3d at 447; *Meek v. State*, 790 S.W.2d 618, 620 (Tex. Crim. App. 1990).

Here, the trial court's findings specifically state that the testimony from Trooper Escamilla was "not credible."[5] *See State v. Duran*, 396 S.W.3d 563, 572 (Tex. Crim. App. 2013) (concluding that trial judge was entitled to disbelieve officer's testimony that he stopped defendant after seeing traffic violation); *State v. Nash*, 55 S.W.3d 110, 114 (Tex. App.—Austin 2001, no pet.)

---

[5] Before taking the motion to suppress under advisement, the court stated, "Counsel, your Trooper was not a very good witness for you."

6

(deferring to findings indicating that district court disbelieved officers' testimony about reason for traffic stop). Based on that credibility determination, the court rejected Trooper Escamilla's testimony that he did not have probable cause to believe that Padon committed the offense of intoxication manslaughter until three-and-a-half or four hours after his arrival on the scene, concluding instead that "[w]ithin minutes of arriving on the scene, Escamilla had sufficient information to establish probable cause that Padon had committed the offenses of intoxication manslaughter and intoxication assault." Also based on that credibility determination, the court rejected Trooper Escamilla's testimony that he was the only person available to work on the investigation—resulting in his inability to obtain a search warrant for Padon's blood because he was busy at the scene with his investigation—concluding instead that "the on-call duty Trooper Zarate could have secured a warrant for Padon's blood draw had he not simply acquiesced in [Trooper] Escamilla's request for a warrantless blood draw under § 724.012(b)(1)(A)."

We may not presume error if there is a viable legal theory supporting the trial court's suppression ruling. *Nash*, 55 S.W.3d at 114. A viable legal theory supporting the trial court's suppression ruling is that it did not believe Trooper Escamilla's testimony about when he had probable cause to arrest Padon and the inability to secure a warrant for Padon's blood draw. *See id.* We must defer to the trial court's ruling because it turned on an evaluation of the credibility of the Trooper as a witness. *See Cortez*, 543 S.W.3d at 203–04; *Arguellez*, 409 S.W.3d at 662; *Nash*, 55 S.W.3d at 114; *see also Duran*, 396 S.W.3d at 573 (stating that issue of reasonable suspicion or probable cause to stop defendant turned on factual finding of whether officer saw defendant's traffic

7

violation before initiating his detention, and that such finding depended entirely on trial judge's assessment of officer's credibility).

We conclude that the order granting suppression of the evidence, considered with due deference to the trial court's adopted factual findings on Trooper Escamilla's credibility, was not outside the zone of reasonable disagreement and did not constitute an abuse of discretion. *See Cortez*, 543 S.W.3d at 203; *Arguellez*, 409 S.W.3d at 662. Thus, we overrule the State's issue.

## CONCLUSION

We affirm the district court's order.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Field and Bourland

Affirmed

Filed: December 20, 2018

Do Not Publish

8